(156 App. Div. 802.)

### RICE v. HALSEY et al.

(Supreme Court, Appellate Division, First Department. May 29, 1913.)

1. TRUSTS (§ 217*)—MANAGEMENT OF PROPERTY—SPECULATION.

Where a mortgage was assigned to a trustee for the use of the assignor, and after his death for the use of his wife, which assignment contained a provision that all subsequent investments of the proceeds were to be as directed by the assignor, whether such as the law authorized a trustee to make or not, the assignor had a right to insert the condition reserving control in himself, and under such provision he could use the funds for speculation, even though the word "investment" was used in the assignment.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 301–304, 306–309; Dec. Dig. § 217.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. TRUSTS (§ 217*)—RIGHT TO FOLLOW TRUST FUND—DEPOSIT WITH BROKERS.

Where a firm of stockbrokers knowingly permit one to use trust funds deposited with them for purposes of speculation, contrary to the terms of the trust, they are liable for the amount of the deposit.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 301–304, 306–309; Dec. Dig. § 217.*]

3. WORDS AND PHRASES—"INVESTMENT."

While "investment" ordinarily means the use of capital for a specified time for the purpose of deriving an income therefrom, as distinguished from a temporary or speculative use, it is not always limited to such a meaning.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 4, pp. 3755–3758.]

4. TRUSTS (§ 112*)—CONSTRUCTION—EXTRINSIC CIRCUMSTANCES.

A written instrument assigning a mortgage in trust should be construed to carry out the intent of the parties; and, to ascertain that intent, resort may be had to the acts of the parties under it.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 162; Dec. Dig. § 112.*]

Appeal from Judgment on Report of Referee.

Action by Elise E. Rice against Charles D. Halsey and others. Judgment for plaintiff, and defendants appeal. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

William M. K. Olcott, of New York City, for appellants.
Pliny W. Williamson, of New York City, for respondent.

McLAUGHLIN, J. On the 9th of June, 1899, John Smith Rice, husband of the plaintiff, assigned to one John Drohan, as trustee, a mortgage for $15,000. The purpose of the assignment, according to provisions incorporated therein, was to keep the principal invested, subject to Rice's approval, and pay the income derived therefrom to him during his life, and after his death to transfer the principal to his wife, if she were then living, and, if not, to make other disposition of it which it is unnecessary here to mention. One of its provisions was as follows:

"And it is expressly provided that the said trustee, the party of the second part, or his successor, shall at the request in writing of the said party of the first part, assign the said mortgage, or sell, assign, transfer, or mortgage the investment of the proceeds thereof, upon such terms as shall be approved by the party of the first part, and the subsequent investments of the proceeds shall be such as are directed and approved by said party of the first part, whether or not the investments so directed and approved be such as are authorized by law to be made by a trustee."

Drohan accepted the assignment, and took possession of the mortgage, and held the same until April, 1906, when he caused it to be foreclosed. There was realized from a sale of the property the sum of $14,417.20, and shortly thereafter Drohan, at the direction of Rice, purchased, through the defendants (a firm of stockbrokers) five bonds of the Interborough Metropolitan Company and five bonds of the Colorado Midland Railway Company, each of the par value of $1,000.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The purchase price of all of the bonds was $7,641.25, which was paid to the defendants out of the proceeds of the sale of the property under the foreclosure of the mortgage. The bonds thus purchased were left with the defendants for safe-keeping, and were credited in an account opened with them under the name of "John Drohan, Trustee." The defendants knew, when the account was opened, from what source the money used in paying for the bonds was derived, and also the terms and conditions of the assignment, because they then saw, or had in their possession, either the assignment or a copy of it.

Early in 1908 Rice, with the knowledge and approval of the trustee, commenced to speculate in the purchase and sale of bonds, through the defendants, and his transactions were charged or credited as the case might be, in the John Drohan, Trustee, account. In December, 1908, Rice directed the defendants to sell the ten bonds referred to, which they did, and the amount derived from the sale, less commissions, was $7,943.75, which was credited to the account. After the sale the speculations were continued until Rice's death, which occurred on January 2, 1911, when the account was closed. At that time there was standing to the credit of the account $143.65 and 400 shares of a certain stock conceded to be of little or no value. After Rice's death the plaintiff demanded from the defendants the proceeds derived from the sale of the bonds of the Interborough Metropolitan Company and the Colorado Midland Railway Company, which was refused; the defendants tendering to her the amount and stock standing to the credit of the account referred to, which she declined to accept. She then brought this action, also making Drohan a party defendant, to recover said sum, alleging that the use of the proceeds in the speculations as before stated constituted a conversion, for which both defendants and Drohan were liable, and which entitled her to a judgment for that sum, besides interest. She also asked that Drohan be directed to account as trustee for the entire estate.

The answers put in issue the allegations of the complaint, and at the beginning of the trial the action was severed, so as to make Drohan a separate defendant. It was thereafter continued against these defendants to recover the proceeds derived from the sale of the ten bonds originally purchased. The referee, to whom the issues had been referred, held the defendants liable for that amount, together with the interest thereon from the date of the death of Rice, and from a judgment entered upon his report, defendants appeal.

[1, 2] But a single question is presented, viz., whether Rice reserved to himself in the assignment to Drohan the right to use, for speculative purposes, the bonds of the Interborough Metropolitan Company and the Colorado Midland Railway Company. The right to purchase these bonds does not seem to be questioned. If he did not have that authority, then such use was illegal, since the law does not permit one to speculate with trust funds (Steele v. Leopold, 135 App. Div. 247, 120 N. Y. Supp. 569, affirmed 201 N. Y. 518, 94 N. E. 1099; Matter of Myers, 131 N. Y. 409, 30 N. E. 135), and defendants would be liable for the loss, because they received and disposed of the proceeds of the bonds with full knowledge of the terms of the trust. Steele v.

Leopold, supra; First National Bank v. National Broadway Bank, 156 N. Y. 459, 51 N. E. 398, 42 L. R. A. 139.

A careful consideration of the assignment leads me to the conclusion that Rice never intended to divest himself of the power to direct how the proceeds derived from the foreclosure of the mortgage should be used; otherwise, there is no meaning to the words that Drohan should, at Rice's request, "assign the said mortgage, or sell, assign, transfer, or mortgage the investment of the proceeds thereof upon such terms" as should be approved by him. Whatever Rice directed in this respect, Drohan had to do. He had to invest the money in the manner directed by Rice, and this irrespective of whether the investments were "authorized by law to be made by a trustee." The mortgage belonged to Rice. No one else had any interest in it. He could, therefore, do with it as he saw fit, and when he assigned it to Drohan he could attach any condition that he desired. The condition which he did attach was thereafter to control absolutely what should be done with the proceeds.

[3] The learned referee seems to have been led to a different conclusion, because in the assignment the word "investment" was used. It is doubtless true that, when one speaks of an investment, he ordinarily means the use of capital for a specified time for the purpose of deriving an income therefrom, as distinguished from a temporary or speculative use of it. This, however, is not its only meaning, nor do I think the word was used in that sense by Rice or so understood by Drohan. In People ex rel. Parker Mills v. Commissioner of Taxes, 23 N. Y. 242, it was said:

"A sum is 'invested' whenever its amount is represented by anything but money."

And in Jennings v. Davis, 31 Conn. 134, it is held that money loaned is invested in a debt against the borrower; also in State ex rel. First National Bank v. Bartley, 39 Neb. 353, 58 N. W. 172, 23 L. R. A. 67, that money deposited in a bank is invested. One of the definitions given in the Century Dictionary is:

"Money or capital let out for the purpose of producing profit or benefit."

[4] The learned referee, as it seems to me, was misled as to the true intent of the assignment by placing too technical a meaning upon the word "investment." If possible, a construction is always to be placed upon a written instrument which is just to both of the parties to it; in other words, such a construction as will carry out the intent of the parties. 17 Am. & Eng. Enc. of Law (2d Ed.) p. 2; Herryford v. Davis, 102 U. S. 235, 26 L. Ed. 160. And to ascertain that intent resort may be had as to what was done under it. Woolsey v. Funke, 121 N. Y. 87, 24 N. E. 191; Seymour v. Warren, 179 N. Y. 1, 71 N. E. 260. The conduct of both Rice and Drohan indicates as clearly as anything can what they understood the assignment to mean, and I think the language there employed justifies what they did.

If the foregoing views be correct, then it follows that the judgment appealed from must be reversed, and a new trial ordered, with costs to appellants to abide the event. All concur.