In the Matter of the Judicial Settlement of the Account of Proceedings of UNITED STATES TRUST COMPANY OF NEW YORK, as Trustee under the Will of JAMES B. COLGATE, Deceased.

UNITED STATES TRUST COMPANY OF NEW YORK, as Trustee, etc., Appellant, Respondent, *v.* JESSIE C. COLGATE and Others, Respondents, Appellants.

Second Department, October 3, 1919.

Trust — will — provisions of codicil authorizing investments by trustee and relieving it from liability for loss, construed — testamentary trustee only liable for net loss to trust fund — assignments and release by beneficiaries not a bar to right to have account of trustee surcharged.

Under a codicil authorizing a testamentary trustee to receive securities and to hold the same under a trust " or to sell the same and invest the proceeds thereof in like securities or in such railroad bonds, stocks and other securities as it shall in the exercise of a sound discretion deem to be for the best interest of said trust estate, it being my will that the said trustee shall not be limited to the usual investments of trust estates," and further providing " that my said trustee shall not be held liable or responsible for any loss which may occur to said trust estate by reason of the retention of any of the securities which they may so receive from my executors or by reason of any investments made in accordance with these directions," said trustee should not be held liable and his account surcharged

for loss resulting from an investment of cash in stock of a railroad company then in good repute and paying good dividends, where it appears that subsequently the general conditions in this country became most extraordinary owing to the war, and that during said period there was a large depreciation in the market values of stocks of other good railroad companies.

The trustee was authorized under the codicil to invest both the cash and the proceeds from the sale of securities actually delivered to it.

The provision of the codicil exempting the trustee from liability to loss from investments was ample protection from liability for retaining the stock for a period of thirteen years, and it should not be held liable for negligence either in the original purchase or in the retention of the stock.

If the trustee were liable for the purchase and retention of the stock and, therefore, chargeable with its depreciation in value, it should be credited with what it received upon the sale of the subscription rights appurtenant to the stock, and be held liable only for the net loss to the trust fund resulting from the entire transaction.

Assignments to the trustee by two of the beneficiaries under the trust of their interest in the trust fund, and the execution of a release to the trustee by another beneficiary, upon receiving the securities which had been set aside as his share, did not operate to bar the rights of said beneficiaries to have the account of the trustee surcharged, if said rights otherwise existed.

CROSS-APPEALS by the United States Trust Company of New York, as trustee, and by Jessie C. Colgate and others, from parts of a decree of the Surrogate's Court of the county of Westchester, entered in the office of said Surrogate's Court on the 31st day of December, 1918, settling the accounts herein and surcharging the same.

*William A. W. Stewart* [*H. K. Davenport* with him on the brief], for the appellant, respondent, United States Trust Company of New York.

*Theodore H. Lord* [*Charles W. Lucas* and *Irene Bennett Adams* with him on the brief], for the appellants, respondents, Jessie C. Colgate and others.

*Theodore F. Humphrey*, general guardian of the respondent, Jessie C. Colgate, an infant.

MILLS, J.:

These are cross-appeals respectively by the trustee of a trust created by a codicil to the will of the late James B.

Colgate, and by the remaindermen beneficiaries under that trust, from a decree of the Surrogate's Court of Westchester county, filed December 31, 1918; the trustee appealing from that part of the decree which surcharged it with the sum of $7,253.50 as a balance of loss upon its investment of funds in 200 shares of the common stock of the Chicago, Milwaukee and St. Paul Railroad Company, and the beneficiaries appealing from so much of that decree as allowed to the trustee a credit upon that loss of a certain sum received from the sale of subscription rights upon the stock, which credit reduced the loss to the amount above stated.

There is no dispute about the facts. They are as follows: The codicil probated February 24, 1904, left to the United States Trust Company a fund of $200,000 in trust to pay the income thereof to the testator's son, William H. Colgate, during his life, and upon his death to pay the fund to that son's children then living, each portion payable upon the recipient attaining the age of twenty-five years. On April 15, 1904, the trustee for that fund received from the executors certain securities of the appraised value of $45,000, and also $155,000 in cash. It soon invested the cash in certain securities which included the 200 shares of common stock above stated, the same being purchased at the rate of $144.25 a share, making an aggregate price of $28,850. The trustee continued to hold that stock until on September 24, 1917, it sold the same at $58.25 a share, or for the aggregate sum of $11,621, making a gross loss or depreciation of $17,229 upon the investment. Meanwhile it had sold certain stock subscription rights which had been issued upon those shares for the aggregate sum of $8,975.50, which, being deducted from the gross loss or depreciation, left a net loss or depreciation of $7,253.50. The decree surcharged the trustee upon its final accounting, then pending, with that net loss. The portion of the codicil referring to that trust contained the following provisions as to the powers and duties of the trustee in respect to its investment:

" And it is further my will and I authorize and empower my said Trustee the United States Trust Company of New York in lieu of money to receive from my Executors any stocks, bonds, mortgages or other securities which may

be held by me at the time of my decease in payment of said legacy at their market value to be ascertained by appraisement and hold the same upon the trust hereby created for the benefit of my said son William or to sell the same and invest the proceeds thereof in like securities or in such railroad bonds stocks and other securities as it shall in the exercise of a sound discretion deem to be for the best interest of said trust estate it being my will that the said Trustee shall not be limited to the usual investments of trust estates.

" It is my will that my said Trustee shall not be held liable or responsible for any loss which may occur to said trust estate by reason of the retention of any of the securities which they may so receive from my Executors or by reason of any investments made in accordance with these directions."

By stipulation of the parties the facts as to the said investment and the standing of the stock and its market variations during the period of its retention by the trustee as above stated, were proven by the affidavit of Mr. Kingsley, vice-president of the trustee. The material facts so proven are that, as is well known, that railroad company was at the time of the said purchase in 1904 regarded as one of the best in the country, paying good dividends, then at the rate of seven per cent, but that during the war period its market value pretty steadily declined, although fluctuating considerably, and in 1917 ranged from ninety-two high to thirty-five low. It appears also, as is well known, that during the same period there was a large depreciation in the market values of stocks of other good railroad companies.

The learned surrogate filed a brief opinion in which he held that the investment in railroad stocks was not allowed either by statute* or by the codicil.

---

* See Pers. Prop. Law (Gen. Laws, chap. 47; Laws of 1897, chap. 417), § 9, as amd. by Laws of 1902, chap. 295; Banking Law (Gen. Laws, chap. 37; Laws of 1892, chap. 689), § 116, as amd. These statutes were amended and revised by Banking Law (Consol. Laws, chap. 2; Laws of 1909, chap. 10), § 146, as amd.; Banking Law (Consol. Laws, chap. 2; Laws of 1914, chap. 369), § 239, as amd.; Pers. Prop. Law (Consol. Laws, chap. 41; Laws of 1909, chap. 45), § 21; Decedent Estate Law (Consol. Laws, chap. 13; Laws of 1909, chap. 18), § 111; Laws of 1918, chap. 544, since amdg. said last two sections.— [Rep.

It also appears that after three of the four beneficiaries arrived at full age, and after the death of their father, the life beneficiary, two of them, namely, Gertrude M. Colgate and James B. Colgate, each executed to and with the said trustee an instrument assigning to it his or her interest in said trust fund upon a new and further trust therein specified, and that the third adult beneficiary, William Hoyt Colgate, after reaching full age executed to the trustee a release upon receiving from it the securities which it had set aside as his share. The trustee before the Surrogate's Court claimed that those assignments and that release operated as to the three adult beneficiaries to waive and bar any claim by them to surcharge the account of the trustee, as has been done; but the learned surrogate in his opinion overruled that contention.

The main question presented by these appeals, therefore, is the question whether or not the said provision of the codicil authorized the particular investment in question. In his main decision the surrogate found that the purchase and retention of said stock were unauthorized, and in violation of the duty of the trustee, although in passing upon the requests submitted he refused to find either way upon the question whether or not the codicil authorized such investment.

Counsel for the beneficiaries contends that the above-quoted clause in the codicil must be construed as authorizing investment in other than securities usual for trust estate investments only as to the proceeds derived from sales of the securities held by the testator at his death, and, therefore, as not authorizing such investment of the cash ($155,000), which was turned over by the executor to the trustee as the major part of the trust fund of $200,000, and, therefore, as not authorizing this particular investment in the stock of the Chicago, Milwaukee and St. Paul Railroad Company; while counsel for the trustee contends that that clause in the codicil did authorize such investment generally of the trust fund, both of the cash and of the proceeds from the sale of securities actually so turned over.

It is my judgment that the latter contention is correct. It seems to me that any doubt upon the subject is solved in that way by the general term used in the codicil, viz.: " it being my will that the said Trustee shall not be limited

to the usual investments of trust estates." It would be a very narrow construction to limit those general words to the special instances therein just before detailed, namely, the reinvestment of the proceeds of sales of the securities actually turned over, which had belonged to the testator in his lifetime. No substantial reason for such distinction can be surmised, and certainly none appears in any way in the evidence. It is plain from the testimony of Mr. Kingsley that in 1904, when this investment was made by the trustee, the common stock of the Chicago, Milwaukee and St. Paul Railroad Company was in good repute as compared with other railroad stocks.

It is also contended by counsel for the beneficiaries that it was negligence for the trustee to retain the stock so long — thirteen years — and the latter part of the period in the face of a declining market. It appears that the stock maintained its market value fairly until about the commencement of the war, that then it declined and continued to decline past the time when it was sold by the trustee on September 24, 1917, and that by the end of 1917 it had sold down to thirty-five.

There is in the decision no attempt to find when the trustee in the exercise of due care should have sold the stock upon the declining market if its original investment therein was authorized; therefore, nothing appears in the decision from which we could fix the loss upon that basis. The finding of negligence therein is general, both in the purchase and the retention; nor do I perceive in the evidence sufficient basis for that determination if we should hold that due care did require an earlier sale of the stock. It is quite likely that the exemption in the codicil from liability to loss upon investment made by the trustee in the exercise of the authority conferred, while granted in absolute terms, might not cover every conceivable such loss; still I think it is ample to protect the trustee from liability for retaining the stock as long as it did. The general conditions in this country were most extraordinary. The railroads were taken over by the Federal government, and it was a matter of common thought for a time that their securities would appreciate in value under that system. I think it would be unreasonable to hold a trustee liable for retaining such securities under such conditions in the hope of a better market, when it was authorized by the terms

of the trust to make such an investment originally. In short, it is my conclusion that no negligence on the part of the trustee was established, either in the original purchase or in the retention. of the stock.

As to the appeal by the beneficiaries, I think that if the trustee was properly held liable for the purchase and retention of the stock, and, therefore, chargeable with depreciation in its value and consequent loss, it was by the Surrogate's Court properly credited with what it received upon the sale of the subscription rights appurtenant to the stock; or in other words held liable only for the net loss to the trust fund resulting from the entire transaction.

As to the contention of counsel for the trustee that the said trust assignments and release by the three adult beneficiaries operated to bar their rights to have such surcharge made, if it otherwise existed, I agree with the conclusion of the learned surrogate that they did not so operate. The assignments were obviously intended merely to pass to the trustee upon a new trust whatever right the assignor had under the former one, that is, under the codicil. The release even refers to a possible balance upon the conclusion of the accounting proceedings, which were then pending. The evidence does not show that this particular investment was then called to the attention of either of the beneficiaries. It is to be noted that the trustee on August 15, 1917, wrote a letter to the attorney of James B. Colgate, one of the beneficiaries, stating the then investments of the trust funds, and among them the 200 shares of common stock of the Chicago, Milwaukee and St. Paul railroad, and valuing it at par, viz., $20,000; whereas the testimony of Mr. Kingsley showed that that year the market value ranged from ninety-two to thirty-five, and on September twenty-fourth, only a few days later, the trustee sold that stock at fifty-eight·and one-quarter. Indeed, that letter is the only thing in the record which appears to savor of anything like misleading in the conduct of the trustee in its dealings with any of the beneficiaries.

I advise, therefore, that the decree appealed from be modified so as not to surcharge the trustee with any amount on account of the purchase and sale of said stock, and that as·so modified

it be affirmed, with costs to the trustee payable out of the trust estate; that findings of fact 5, 6 and 8, and conclusions of law 1 and 2 in the decision be reversed, and that finding of fact 10 be modified by striking therefrom the words " except as to the purchase, retention and sale of said two hundred shares of common stock of the Chicago, Milwaukee and St. Paul Railway Company; " and that we make the following conclusion of law, viz.: " that the several objections to the said account should be and the same hereby are overruled and in no respect sustained; and that the said account is in all respects approved, settled and allowed as filed."

JENKS, P. J., RICH, KELLY and JAYCOX, JJ., concurred.

Decree of the Surrogate's Court of Westchester county modified in accordance with opinion, and as modified affirmed, with costs to the trustee payable out of the trust estate. Order to be settled before Mr. Justice MILLS.