IRVING TRUST COMPANY (Successor to KNICKERBOCKER TRUST COMPANY), as Trustee under an Agreement Made the 24th Day of December, 1901, between CONSUELO, DOWAGER DUCHESS OF MANCHESTER, as Grantor, and KNICKERBOCKER TRUST COMPANY, as Trustee, Plaintiff, *v.* NATICA, LADY LISTER-KAYE, and Others, Defendants.

IRVING TRUST COMPANY (Successor to KNICKERBOCKER TRUST COMPANY), as Trustee under an Agreement Made the 24th day of December, 1901, between CONSUELO, DOWAGER DUCHESS OF MANCHESTER, as Grantor, and KNICKERBOCKER TRUST COMPANY, as Trustee, Plaintiff, *v.* EMILY YZNAGA and Others, Defendants.

Supreme Court, New York County, August 28, 1935.

*Davies, Auerbach & Cornell [Orrin G. Judd* and *Julien D. Cornell* of counsel], for the plaintiff.

*Cadwalader, Wickersham & Taft [Hampton D. Ewing, Jr.,* of counsel, appearing for Thomas B. Gilchrist and United States Trust Company of New York, as successor trustees of the trusts of the American estate of Consuelo, Dowager Duchess of Manchester, created under her last will and testament], for the defendants.

*Hill, Lockwood & Redfield [Luke B. Lockwood* and *Arthur J. Albert* of counsel representing Natica, Lady Lister-Kaye, and Emily Yznaga], for the defendants.

GUSTAVE HARTMAN, Referee. On the 24th day of December, 1901, by two trust indentures made by and between Consuelo, Dowager Duchess of Manchester, as grantor, and the Knickerbocker Trust Company, as trustee, two trusts, which are the subject of the present two actions, were created respectively for the benefit of Natica, Lady Lister-Kaye, and Emily Yznaga.

As successor trustee, the Irving Trust Company is now accounting for the first time for the acts of itself and its predecessors in administering the said two trusts, covering the entire period of their existence from December 24, 1901, to September 12, 1934, the date of the account in the Natica, Lady Lister-Kaye, trust, and to September 13, 1934, the date of account in the Emily Yznaga trust, and seeks a judicial settlement thereof.

Interlocutory judgments were made and entered herein by the Hon. ISIDOR WASSERVOGEL, one of the justices of this court, referring these actions to me to take and state the accounts of the plaintiff and its predecessor trustee, in accordance with section 470 of the Civil Practice Act and with rule 174 of the Rules of Civil Practice and to take such evidence as may be offered by any party herein in support of any objections which may be filed hereto.

The Natica, Lady Lister-Kaye, trust, at the creation thereof, was of the value of $209,772.25; the other, the Emily Yznaga trust,

at the time of its creation, was of the value of $104,219. The total amount of income received by the trustee in the Natica, Lady Lister-Kaye, trust during the entire period of the administration thereon was in the sum of $342,603.84. The total amount of income received by the trustee in the Emily Yznaga trust during that entire period was in the sum of $173,827.18. On September 12, 1934, the date of the account of the Natica, Lady Lister-Kaye, trust, the balance of principal left in the possession of the trustee was in the amount of $216,304.71, and the balance of income on the said date left in the possession of the trustee was in the sum of $523.33. On September 13, 1934, the date of the account in the Emily Yznaga trust, the balance of principal left in the possession of the trustee was in the amount of $113,204.20, and the balance of income on the said date left in the possession of the trustee was in the sum of $3,499.43.

The life beneficiaries under the trusts, Natica, Lady Lister-Kaye, and Emily Yznaga, have filed objections to the accounts. Thomas B. Gilchrist and the United States Trust Company, trustees under the last will and testament of the creator of the trusts and possessors in such capacity of an interest in the annual income produced by the trusts and of the remainder interests in the trusts, also have filed objections in these accounting proceedings. If sustained in their entirety, these objections would result in the surcharging of the trustee in the sum of over $100,000, plus interest over a long period of years, for losses actually sustained, without taking into account the losses that may be sustained.

Defendants do not question the good faith, diligence and due care of the trustee in making the investments set forth in their objections. Nor are the figures in the accounts disputed. They do, however, charge that the trustee had exceeded the authority vested in it, under the terms of the trust indentures, and, consequently, seek to have it surcharged for the losses sustained and for the losses that may be sustained as a result thereof. To the question raised as to the authority and power of the trustee to make the said investments, under the terms of the trust indentures, I do, therefore, primarily address myself herein.

A separate objection is made by defendant Natica, Lady Lister-Kaye, to the purchase by the trustee on September 3, 1931, of a $23,400 participation in a mortgage made by Stanley Building Company covering premises 825 Gerard avenue, Bronx, New York city, on the ground that prompt notice of the investment had not been given to the beneficiary in accordance with section 188, subdivision 7, of the Banking Law. I shall also herein pass on this objection.

The objections interposed in the Natica, Lady Lister-Kaye, trust by Thomas B. Gilchrist and the United States Trust Company to the two purchases made by the trustee on April 30, 1924, and to the purchase made by it on May 1, 1934, of American Smelting and Refining Company preferred stock, as listed in the last three items in paragraph 1 of their objections, were dismissed, with the consent of the defendants, in view of the fact that the said securities had been disposed of by the trustee without loss to the said trust estate, and, therefore, are not under consideration herein.

Despite the fact that each trust is the subject of a separate action, for the purposes of this opinion, however, they will be considered as one, inasmuch as they involve practically identical problems.

Within the terms of the indentures must be found the authority and power of the trustee and its predecessor trustee for the making of the investments, which are now challenged. In this connection, the following investment provisions contained in the trust indentures call for closest examination and study in the consideration and determination of the sharply contested issue presented herein:

" To sell, convey and transfer the *personal estate and securities* hereby transferred or any part thereof, and any real or personal estate which may hereafter form any part of the trust hereunder; or which may be purchased under the powers hereinafter given, whenever in the judgment of the trustee it shall be to the interest of the trust estate so to do, and upon such sale to make and execute all proper instruments and transfers thereof, *and thereafter to invest the proceeds in real estate or in bonds secured by mortgage upon real estate in the State of New York or elsewhere or in bonds or preferred stock of railroads approved by the Trustee and Harry B. Hollins of the City of New York, or in such other personal securities as may be approved by them as investments.*

" It is distinctly understood and agreed that the subject of investments shall be left to the discretion of the persons above named and that in making such investments they shall not be confined to legal investments, so-called, or to investments permitted to Trustees, *but shall be allowed to exercise their* entire discretion in the premises without liability to the parties hereto in case of loss." (Italics mine.)

These trusts were created in England by an English subject domiciled in England. Nevertheless, the construction of the trust agreements must be made in accordance with the laws of the State of New York inasmuch as that seems to have been the intent of the settlor, judging by the fact that all of the property is located here in New York and that the trusts have been administered here by New York trustees. (*Hutchinson* v. *Ross*, 262 N. Y. 381.)

The parties herein differ radically in their interpretations as to just what is meant by the expression " or in such other personal securities as may be approved by them as investments " contained in the indentures and the extent of the discretion vested thereby in the trustee to invest the funds of the estate. It is obvious that this phrase expressed in these general terms adds to the specific powers granted to the trustee and Harry B. Hollins of the city of New York. The word " other " emphasizes that fact. Otherwise, it is meaningless, as employed in that phrase. The objectants, however, it seems to me, seek to give a narrow interpretation to the language employed, contending that while it may confer power upon the trustee to invest in corporate and individual notes, this does not include the power to invest in the common stock of corporations.

The second paragraph quoted hereinabove from the trust indentures, which provides that the trustee and Harry B. Hollins shall have the right " to exercise their entire discretion in the premises," to my mind, confers no additional authority upon the trustee and Harry B. Hollins, for it apparently refers back to the previous clauses containing the specific grants of power and discretion. It does, however, make clear that the said trustee and Harry B. Hollins are not to be confined to legals in their investments.

In my opinion, it would be an unreasonably rigid interpretation to limit the construction of the phrase " or in such other personal securities as may be approved by them as investments " by the doctrine of *ejusdem generis*, for it stands alone as a specific grant of power, separated from the rest of the sentence by punctuation marks. (*Matter of United States Trust Co.*, 189 App. Div. 75; *Baumann & Co.* v. *Manwit Corp.*, 213 id. 300.)

The defendants tacitly concede this, when they seek to give an entirely distinct meaning to this clause and find in it authorization to invest in corporate and individual notes. The doctrine, if applied, would make the phrase practically meaningless, as the language shows obviously was not intended. From the context of the paragraphs quoted from the indentures, it would seem that preferred stocks and bonds of railroad corporations, contained in the specific powers, were mentioned only for the purpose of serving as a guide or as the expression of the settlor's preference.

The reasoning of the objectants as to what is meant by " personal securities " appears to me most strained. I can find no authority holding that such expression is intended to authorize investment only in corporate or individual notes secured by pledge or common stock certificates and does not authorize investment in common or other stocks. The objectants have not submitted any authority supporting their contention.

On the other hand, while I have found no authorities specifically defining the expression " personal securities," the meaning of the word " securities " has been passed upon freely and is no different from that employed by ordinary laymen in using the word.   (Contracts, Restatement, § 235 [c]; *Rosenthal* v. *American Bonding Co.*, 207 N. Y. 162.)

The courts have included in that term stocks of all sorts.

In *Matter of Vanderbilt* (132 Misc. 150, at p. 154) Mr. Surrogate FOLEY writes: " In the general usage of speech employed by men of business affairs, the word ' securities ' is used in its widest sense to describe the broad class of financial investments.   As so employed, it imports the inclusion of stocks — common and preferred — as well as secured  investments."

The trust indentures permit, as we have seen, the trustee to invest " in such other personal securities as may be approved by them as investments."   Logically, it would follow that the word " other " denotes that the instruments have already made reference to a class of investments, which the settlor deemed " personal securities."

Therefore, it must be assumed. that the word " other " relates back to the preferred stocks and bonds of the railroad companies, mentioned just previously in the indentures, from which the inference must be drawn that the creator of the trusts considered stocks and bonds as " personal securities."

In the trust indentures, there is a heading " Securities."   Under it are listed all the stocks and bonds of which each trust estate consisted.   If any additional evidence be needed of the character of the stocks in the ordinary accepted interpretation, it would seem that such listing was expressive of the opinion of the settlor that she considered stocks of all kinds as securities.

I cannot find that the word " personal " employed in the quoted phrase, is of any particular significance except in so far as the word " personal " is in contradistinction to " real property."   The objectants state that the trustee could have bought corporate notes and admit that " securities " embrace corporate notes secured by pledges of common stock certificates.   The mere fact that the word " personal " is missing from the heading of the trust indentures and was present in the disputed phrase is of no moment.   There seems to me to be no logic or authority for our adopting a narrower interpretation of the expression " personal securities " than the creator of the trust deeds did of the word " securities."

The interpretation placed upon a document by the parties to it is always helpful in determining its meaning.   Innumerable authorities recognize the force and effect of tacit conduct in the

construction of doubtful terms of an instrument. The intentions of the parties, as evidenced by their acts, are after all guide posts in the solution of such problems. (Contracts, Restatement, § 235 [e].) " If the conduct of the parties subsequent to a manifestation of intention indicates that all of the parties placed a particular interpretation upon it, that meaning is adopted if a reasonable person could attach it to the manifestation."

In *Seymour* v. *Warren* (179 N. Y. 1) O'BRIEN, J., for the Court of Appeals, wrote: " There is no better way of ascertaining the meaning and construction of a written contract than to look at the acts and conduct of the parties under it. (*Woolsey* v. *Funke*, 121 N. Y. 87; *Insurance Co.* v. *Dutcher*, 95 U. S. 269; *Nicoll* v. *Sands*, 131 N. Y. 19.) ". (*Rice* v. *Halsey*, 156 App. Div. 802; affd., 215 N. Y. 656.)

The record discloses that almost immediately after the creation of the trusts, investments in common stocks were made by the trustee with the approval of Mr. Hollins, who acted in an advisory capacity to the trustee, as the personal representative of the creator of the trusts. This occurred during the lifetime of the settlor of the trusts, with her knowledge, and, at least tacit approval, for it appears by the uncontradicted testimony that regular accounts were sent to her every year with information as to the investments made. It must be concluded, under the circumstances, that the construction made by the trustee and Mr. Hollins of the trust instruments coincided with her own and was the correct one.

The defendants, Natica, Lady Lister-Kaye, and Emily Yznaga, object to the investment by the trustee in the bonds of the Superior Coal Company on the ground that such general mortgage bonds of corporations are not " bonds secured by mortgage upon real estate " in the usual or ordinary sense.

It would seem that even under the definition of " personal securities " supplied by the defendants, this particular investment was authorized. A bond is similar to a note and the fact that it was secured by all the assets of a corporation does not militate against it. If, as claimed by the objecting parties, the trustee could invest in corporate notes, the trustee most certainly could purchase bonds, even though they were further secured by a general mortgage.

The defendant, Natica, Lady Lister-Kaye, further objects to the purchase by the trustee of a participating interest in the mortgage of the Stanley Building Company, covering premises at 825 Gerard avenue, Bronx, New York. It is her contention that the notice, which she received three months after the acquisition of the interest in the mortgage, was not prompt notice in conformity with the

requirement of section 188, subdivision 7, of the Banking Law, and that the investment became thereby unauthorized and illegal.

Prior to the enactment of the above section, the only objection to the purchase of a participation in a mortgage by a trustee was based upon the desire of the courts to prevent the commingling of trust funds with other money. However, so long as there was a clear demarcation of the interest of the trust estate in the bond and mortgage and notice was given so as to prevent unlawful manipulations with trust property, such investments were deemed proper. (*Matter of Union Trust Co. [Hoffman Estate]*, 219 N. Y. 514.) The statute was only the enactment of a common-law rule.

The Irving Trust Company noted the acquisition of the participation certificate on its records and placed the certificate within the file containing the rest of the property of the trust estate. Three months later, Natica, Lady Lister-Kaye, in accordance with her custom, visited America and was apprised of the investment. She made no objection to it, and, at that time, there had been no change in the situation since its acquisition.

In view of the fact that her visit was expected within a short time, the trustee acted reasonably in awaiting it, and then, in accordance with its established practice, of going over the condition of the estate with her. Inasmuch as no change did take place during this period, nor was it likely that any would occur in so short a time, it should be held that the notice was sufficiently prompt to satisfy the statute.

A reasonable interpretation of the statute, moreover, is that failure to give prompt notice after the purchase of a participation certificate would render the trustee liable for any loss occurring during the period, commencing at the time that it should have given notice and ending when actual notice was given, or, possibly, that if such loss does take place, the *cestui que trust* would have the right to reject the entire investment. But, if when notice is sent, the investment is as good as when made, and no objection is then made thereto, it would be illogical to hold that any technical defect that might have existed has not been cured.

On this proposition, *Matter of Adriance* (145 Misc. 345) is directly in point. There, it was held that an investment, unauthorized and illegal when made, could be made legal by the happening of subsequent events and would furnish no basis for a surcharge, where it in no way contributed to the loss. The trustee therein had invested in a mortgage on an incompleted building, which, of course, is an unauthorized act, but the building was eventually constructed, and the court, failing to find a causal connection between the

original invalidity and the subsequent loss, refused to make a surcharge.

In view of all the foregoing, it becomes unnecessary to discuss the right of a trustee to set off the profits.realized on transactions in certain prescribed securities against losses sustained in other transactions in the same securities and the other questions so ably discussed by the parties in their briefs.

Accordingly, the objections are overruled and the account of the trustee is in all respects sustained and approved and should be judicially settled, as filed herein.

The foregoing opinion was upheld, the reports of the referee thereon being confirmed by order of Mr. Justice CAREW, dated October 16, 1935.