Frank E. Thomas, J.
The petitioners, the trustees above named in this proceeding, petition for a judicial settlement of the account of said trustees down to December 31, 1956. Counsel representing the remainderman and special guardian for incompetent remaindermen and special guardian for unknown heirs and necessary parties who may fall within the classification of remaindermen, have filed formal objections to the account, asking that the trustees be surcharged with $79,773.75 reflected in Schedule B of said account, arising out of the failure of the trustees to amortize the premium value of certain nontaxable municipal bonds coming into their possession from the executors of said estate; and further, that the continued retention of bonds forming the corpus of said estate will increase the loss to the remaindermen; that the trustees have failed to act with reasonable care and prudence in the management of the trust corpus to preserve and maintain said trust corpus and that they have acted solely in the interests of the life beneficiary to the exclusion of the remaindermen.
Objectants pray for a construction of the will and particularly of paragraph “Twentieth” of said last will and testament as to whether or not the provision allowed the trustees to retain the investments if requested by the life beneficiary as against the authority therein directed to preserve and maintain the trust corpus and whether or not under the present economic *63 trend they have used reasonable diligence and prudence to preserve the assets of the trust corpus and to prevent loss, and further, if under the will the said trustees have acted as required by law, impartially in their management of the trust corpus in protecting the interests of the life beneficiary and the remaindermen, and for such other relief as to the court may seem just.
A decree of this court settling the accounts of the executors and turning over the corpus of the estate to the trustees under and pursuant to paragraphs ‘1 Eighteenth ’ ’ and ‘ ‘ Nineteenth ’ ’ of said last will and testament was dated January 8, 1947. The bonds in question, the premium value of which the trustees have not amortized, were owned by the decedent at the date of his death and, pursuant to the decree of this court referred to, were turned over by the executors to the trustees and make up the greater percentage of this trust corpus. The trust created in paragraph “Sixteenth” of said last will and testament has terminated by reason of the death of the life beneficiary and has become part of the residuary trust under paragraph ‘ ‘ Eighteenth ’ ’ of said last will and testament created solely for the life use of Sarah Jane Emily Wells Kilmer, now Ellison, widow of said decedent.
The decree settling the accounts of the executors above referred to, among other things, stated:
“ Ordered, adjudged and decreed that, under the language and provisions of the Will and Testament of the deceased, the executors or trustees were not and are not required to amortize any part of the interest or income received or receivable upon the bonds or securities which were worth or valued above par as of the date of decedent’s death and which were owned by him at death and thereupon came to the executors * * *
‘ ‘ But, that the net income from bonds or securities purchased at a premium by the executors or trustees after the death of testator shall have deducted therefrom, and retained by the executors and trustees annually, an amount sufficient ultimately to amortize the premiums paid therefor, and the life beneficiary shall be entitled only to the net income therefrom after such amortization of premiums and the Court so holds and decides ”.
The evidence in the present proceeding discloses that the trustees considered from time to time the desirability of the sale of the bonds in question; that they considered the market value, the book value and their quality and the opinions from others as to the retention or sale of the bonds; that they also took into consideration the terms of the will and the preferable income of a tax-free nature to the life beneficiary; that the bonds were sound bonds and of high quality from the invest- *64 meat standpoint; that they were the type of security that the decedent preferred; that, though it was a discretionary matter, the trustees felt they had authority under the will to retain them; that, by an instrument in writing, the life beneficiary had requested the trustees to do so and had from time to time informally requested the trustees to hold said bonds.
Part of the evidence was a written consent and approval by the life beneficiary dated January 20, 1955 by which she requested and desired the trustees to continue to retain said bonds as part of the corpus of said trust.
Also, in evidence were the minutes of a trustees’ meeting held on November 14, 1951 in which, referring to the investments making up the trust under this will for the life beneficiary, it is stated:
“ The securities were again considered from the standpoint of quality, maturity, yield, and their prevailing prices in relation to the inventory value or cost. * * *
‘ ‘ In their discussion on common stocks as a medium for investment for these particular Trusts, each of the Trustees expressed the opinion from information available to them that the near term trend of stock prices appeared very cloudy and uncertain.”
Section 17-d of the Personal Property Law of the State of New York is not applicable to the estate of this decedent who died prior to the time it was adopted by the Legislature and for that reason the question raised herein must be determined by the case law applicable prior to the time of the adoption of section 17-d of the Personal Property Law (L. 1942, ch. 606. eff. Sept. 1, 1942).
The premium value of bonds purchased by the trustees has been amortized by them and these bonds so purchased are not in question except as to the continued policy of engaging in this investment field.
The ohjoctants raised several questions which can be determined only in searching and determining the intent of the testator in arriving at an interpretation as to whether or not they have violated duties with which they are charged in their capacity as trustees.
Dealing first with the question of the amortization of the premiums on the bonds which came into the hands of the trustees from the executors of the estate and form a part of the trust corpus, it is stated in McLouth v. Hunt (154 N. Y. 179, 189-190) : ‘ ‘ the questions are not to be determined by any arbitrary rule, but by ascertaining, when that can be done, the meaning and intention of the testatrix, to be derived from the language *65 employed in the creation of the trust, from the relations of the parties to each other, their condition and all the surrounding-facts and circumstances of the case.”
The question of intent that grew out of this decision continued down to the time of Matter of Stevens (187 N. Y. 471), wherein there were established certain definite rules for general use in testamentary interpretation regarding the amortization of premiums on bonds. In this case it is stated (p. 477): “ These rules may not work perfect justice in all cases, and we fully appreciate that there may be inconsistencies between them, but it is far better that they should be uniformly adhered.to, even at the expense of a particular case, than that the administration of estates should be subjected to constant litigation and disputes.”
At page 476, it stated the rules as follows: “ While we admit, in accordance with the decision in Matter of Hoyt [160 N. Y. 607], that the terms of the will may be such as to take a case without the general rule that the principal of the fund must be preserved intact, we think to justify such an exception to the rule the intent should be expressed in the very clearest manner.”
At page 477, the court stated: “We, therefore, adhere to the rule declared in the Baker case, (referring to New York Life Ins. & Trust Co. v. Baker, 165 N. Y. 484) that in the absence of a clear direction in the will to the contrary, where investments are made by the trustee, the principal must be maintained intact from loss by payment of premium on securities having only a definite term to run, while if the bonds are received from the estate of the testator, then the rule in the McLouth case prevails, and the whole interest should be treated as income.”
As determined in these decisions, the rule has been followed in the case of Robertson v. De Brulatour (188 N. Y. 301.) and in Matter of Fanoni (88 Misc. 442) and, more recently, in Matter of Dommerich (17 Misc 2d 1069). In the Fanoni case (supra), the will authorized and empowered the trustees in making up the trust fund to use securities in the estate at the time of the decedent’s death, and the court had this to say (p. 450): ‘‘ Thus the bonds found their way into the fund by force of the will as surely as if they had been specifically bequeathed in trust and their assignment to the trust fund was, through the act of the donees of her power, made by the testatrix ”. This decision was affirmed without opinion by the Court of Appeals (216 N. Y. 640).
The question is more fully discussed in Matter of Hilliard (164 Misc. 677), and one of the objectants attempts to distinguish this case, but it can be 'readily pointed out that in the opinion *66 it is stated (p. 691): “ This court accordingly concurs in the sentiment expressed in Matter of Guaranty Trust Company and Matter of Fanoni that unless and until some diverse determination is made by the court of last resort, it is bound by the rules of Matter of Stevens, with the results:
1 ‘ 1. That where the will makes a specific gift of property either to a life tenant direct or to trustees for his benefit, the life beneficiary is entitled to receive its entire current income in spite of the fact that this may result in an impairment of the value of the principal as it existed at the date of death. ’ ’
In Matter of Guaranty Trust Co. (131 App. Div. 658) in referring to the Stevens case {supra) the court stated (p. 660):
“ In Matter of Stevens, (187 N. Y. 471) the Court of Appeals, in considering all the prior cases, laid down the rule that, in the absence of a clear direction in the will to the contrary, where investments are made by the trustee, the principal must be maintained intact from loss by payment of premium on securities having only a definite time to run, while if the bonds are received from the estate of the testator, the whole interest should be treated as income.”
In considering the question as to whether or not the trustees were obligated to amortize the premiums on said bonds, paragraph “ Twentieth ” of the last will and testament of said decedent, ■ among other things, stated: “ I further authorize and empower my Executors and Trustees in their discretion, to retain, preserve and maintain any and all investments, lands, buildings, live stock and other property of which I may die seized and possessed, even though the same may produce no income, if such retention, preservation and maintenance shall be desired and requested by the aforesaid life beneficiary of my residuary estate, Sarah Jane Emily wells kilmer.”
The bonds in question which were possessed by the decedent at his death, came into the hands of the executors and were transferred by the executors to the trustees by decree of this court above referred to. The life beneficiary, Sarah Jane Emily Wells Kilmer, now Ellison, informally requested from time to time the retention of said bonds by the trustees and did execute a formal written request on January 20, 1955. There can be little question on these facts that the trustees had a right to retain said bonds without the duty to amortize the premium value hereof.
Objectants raised the question because the will of said decedent, in creating the trust under paragraph u Eighteenth ” of said will, directs the trustees to pay the net income to said beneficiary and contend that the expression “ net income ” bind's *67 the trustees to amortize the premium value of said bonds and have cited authorities to sustain their position. It is pointed out that the statement in paragraph “ Eighteenth ” of said will is as to more than net income, as more fully stated as follows: “ to pay all the net income, interest, issues and profits, from said trust fund”.
It is pointed out that in paragraph ‘ ‘ Twentieth ’ ’ of said will, the testator authorized and empowered his executors and trustees, “ to retain, preserve and maintain any and all investments, lands, buildings, live stock and other property of which I may die seized and possessed ’ ’.
The decedent had a special interest in horses and had made large investments in real estate in connection therewith. On reading the entire will, it is readily ascertainable that, in the retention of horses and lands and other property of which the testator was possessed at the time of his death, which could be retained at the request of the widow, the life benéficiary under said paragraph “Eighteenth ” of said will, the decedent envisioned certain expense for the maintenance, preservation and care of the real estate and horses and, for that reason, used the expression “ net income ”, referring to that type of property. Certainly, construing the will as a whole, it cannot be determined that the testator had in mind the impairment of income by amortization of the premium value of said bonds as the other expression of interest, profits and issues certainly conveyed clearly the intent of the testator to grant to the life beneficiary the full use of the income from securities of that type. Thus, the use of the words “ net income ” in the first instance is overcome by the entire direction to the trustees in carrying out the intent of the testator that the life beneficiary should have the full interest and profit of the income from the bonds in question.
The objectants’ further question involves the general management and conduct of the trustees from which it is claimed that they failed to use reasonable diligence and prudence to preserve the trust corpus; that they failed to act fairly and impartially between the life beneficiary and the remaindermen and the objectants have pointed out that not only the $79,773.75 loss, which is reflected in the present accounting, has been sustained, but that further losses will appear on future accountings, resulting from the failure to amortize the premium value of said bonds or the sale of said bonds at a premium value, which losses are only determined on the due dates of the bonds in the future, a large number of which have several years yet to run. It is further pointed out by the objectants that not only has the trust corpus suffered losses in connection with *68 the failure to amortize the premium value of said bonds, but that further substantial loss has been suffered by the present state of economy, which has devalued the purchasing power of the dollar.
It can be concluded that the decedent preferred a nontaxable type bond as an investment, as his estate was largely made up of this kind of security. It has been stated that the trustees may turn to an examination of the investments made by the decedent during his lifetime in order to obtain any light which may be discovered in the will itself as to the intention of the testator regarding the character of investments that he would have desired for his estate. (Hogan v. De Peyster, 20 Barb. 100; Matter of McDowell, 102 Misc. 275.)
It is true that in the economic situation there is a marked change in the last decade and the continued inflationary trend is prevalent. No one questions the soundness of these investments, but the objectants sharply contend that the trust corpus should be protected by some investments in common stock as provided by the more recent amendment to the law of this State. This legislation is permissive only and is limited in the amount that may be invested in such securities. Failure to diversify investments is not improvident per se.
The action of the trustees in continuing to buy tax-exempt municipal bonds under present financial conditions places them in a position to be subject continually to the attack on impartiality in conducting the affairs of the trust as between the life beneficiary and the remaindermen. It may be pointed out that the general over-all plan of the creation of the trust fund and the intention of the testator is most important in the management of the trust. It cannot be questioned that his first concern in the creation of the trust and the disposition of his estate was the continued care of his wife' during her lifetime under such circumstances as to free her as far as possible of all problems and difficulties in the management of his estate, and, to that end, that she, herself, would have something to say about the type of securities most desirable to protect her and carry out his wishes, and the over-all intent of the will is clear on this point. His general collateral relatives were his last thought, as he made clear in the will that if there were any issue of her body, that they would inherit the residuary, and, in the event that there was no issue of her body, then in such event, at least $100,000 of his estate should go to her next of kin before the final division among his collateral relatives. This is going far indeed, as he did not confine the inheritance to issue of their union. His intention was clear that he intended that she would be taken care of in every way before any thought or consideration was *69 given, to the remaindermen and that she, herself, should have something to say about the investments and the trust fund.
It is true that, in looking back over the last decade, the trustees may well have made investments in common stocks that would have inured to the benefit of the life beneficiary and would have prevented an impairment of the corpus by the inroads of inflation and the devaluation of the purchasing power of the dollar. Trustees will be constantly faced before the courts with a question as to whether they have acted wisely in the management of estates during periods of booms and depressions, as the history of our country shows that it has been subjected to the ebb and flow of such periods during the many years of its existence.
The investment policy of the trustees was most favorable to the life beneficiary, but there were other considerations which they passed upon in pursuing the policy that they have to this date. These are disclosed by the evidence and the minutes of the meeting of the trustees held on the 14th day of November, 1951, in which it is stated that the trustees considered many factors which might affect the price of investments and sought advice from investment services and fiduciary counsel. They considered their responsibility to protect the corpus against inflationary trends, the. outlook for common stocks and the element of uncertainty, so it is readily seen that a wide scope of consideration was given before reáching the final judgment in continuing their investment policy.
Trustees must act without self-interest and with equal loyalty as between life beneficiaries and remaindermen and generally owe a duty to make the assets which they hold for the estate productive. This would be true even though it were the intention of the decedent as construed by the court, or even if the will authorized the trustees to retain the investment and exonerated them from liability for loss or depression in its value. {Matter of Clark, 257 N. Y. 132; Matter of United States Trust Co., 189 App. Div. 75.)
They are charged with the duty of being impartial as between successive beneficiaries. {Matter of Hubbell, 302 N. Y. 246.)
No decision sanctions or encourages speculation by trustees. The legislation to invest in common stocks is permissive only and it is not within the realm of the court to advise in this field, but only the duty of the court to judge the trustees in regard to their actions or failure to act under certain circumstances or conditions. There is, no' basis for liability on the part of a trustee for an honest error of judgment arising out of circumstances that he could not be expected to foresee and was power *70 less to prevent; Trustees are expected and are held by the courts to exercise the care, alertness, vigilance and diligence of a prudent person, and this term is used generally and is not set by one prudent person alone. When there is an honest difference between experts, there will be an honest difference between prudent people in the investment field. It has been said that hindsight may be better than foresight for some purposes, but not as a basis for the imposition of liability in a court of law. (Matter of Pate, 84 N. Y. S. 2d 853; Matter of James, 86 N. Y. S. 2d 78; Costello v. Costello, 209 N. Y. 252.)
It can also be stated that a conservative investment plan in itself is not a basis for the imposition of liability in a court of law.
One further question raised by the objectants is that of res judicata and the law is clear that the court only passes at this time on those matters actually before it on this accounting. There is no question that the management of the trust estate and further distribution as to property still in the hands of the trustees is subject to review as well as any matters which are not fully disclosed on the accounting. (Meredith v. First Trust Co. of Albany, 260 App. Div. 517, 520; Bowditch v. Ayrault, 138 N. Y. 222; Matter of Hubbell, 302 N. Y. 246.)
Submit decree in accordance herewith on notice.