In the Matter of the Intermediate Accounting of BANKERS TRUST COMPANY, as Trustee of the Trust Created by JOHN I. WATERBURY.

Supreme Court, Special Term, New York County, June 21, 1962.

*White & Case (John E. MacKenty* and *Evan R. Dawson* of counsel), for petitioner. *Mudge, Stern, Baldwin & Todd* for Florence Waterbury, respondent. *Cadwalader, Wickersham & Taft* for Gladys Wynne-Finch, respondent. *Morris & McVeigh* for Ethel W. Campbell, respondent. *Wormser, Koch, Kiely & Allessandroni* for George A. Campbell, respondent. *Rogers, Hoge & Hills* for John L. Campbell, respondent. *Bokat & Bokat* for Edmund W. Bokat, respondent.

CHARLES A. LORETO, J.    Three intermediate accounts of proceeding are presented for a judicial settlement and for instructions. The trustees of the indentures of trust ask for instructions of the court as to (1) whether the law of New York or New Jersey governs questions pertaining to the validity, administration and construction of each of the indentures of trust; (2) the scope of the investment authority given to the trustee under article second of each of the indentures of trust; (3) the proper allocation of the various stock dividends and distributions made, shown in its accounts for each trust; and (4) the trustee's future administration as to two separate funds accounted for in its accounts with respect to each trust as one trust fund.

The indentures of trust make no express provision as to whether the law of New York or the law of New Jersey should be applied in determining the validity, construction, or administration of the trusts.

It is a well-settled principle of law that the construction of the trust instrument and the management of the trust thereby created by a nonresident of personal property having a situs in this State must be determined by the laws of the State of New York. Here the trust *res* was transferred and delivered over in New York in 1905 and it has since remained here. Moreover, these are trusts of movables created *inter vivos* as distinguished

from a testamentary trust. (See *Hutchison* v. *Ross*, 262 N. Y. 381; *Shannon* v. *Irving Trust Co.*, 275 N. Y. 95; *City Bank Farmers Trust Co.* v. *Whiteing*, 136 Misc. 416; *Irving Trust Co.* v. *Natica, Lady Lister-Kaye*, 157 Misc. 32; *Matter of Baekeland*, 124 N. Y. S. 2d 126; *Matter of McKinney*, 5 Misc 2d 210, 213.)

When the trusts were created in 1905 the settlor was a resident of New Jersey. His three daughters, the named beneficiaries of the trusts, were also residents of New Jersey, as was one of the original trustees. Another trustee was a resident of New York. The settlor of the trusts then was president of the Manhattan Trust Company, a New York City bank. The indentures were prepared by New York counsel and duly acknowledged in New York County. The property made the subject of the indentures was delivered to the trustees in the City of New York, and all property held under the indentures was thereafter administered by the trustees in the City of New York.

Under the terms of each of the indentures the trustees were directed to pay the trust income to the settlor's named daughter for life, and upon the death of such daughter, to transfer the trust property to her issue " when and as they attain the age of twenty-one (21) years respectively, in equal shares, share and share alike, the child or children of a deceased child to represent its parent and to take its or their parent's share per stirpes." In default of issue surviving such daughter the trust property passes " to and among the other children of the Settlor then living and the issue of such as may theretofore have died, equally per stirpes and not per capita, the child or children of a deceased child to take its or their parent's share per stirpes." In the event no children or issue of the settlor survive the named daughter, it is directed that the trust property pass to such persons as the daughters may by will appoint.

The only relevant connections of these trusts with the State of New Jersey are: (1) the settlor resided in New Jersey when he executed the indentures; (2) one of the original trustees resided in New Jersey when he executed the indentures; (3) the life-income beneficiaries resided in New Jersey at the time the indentures were executed.

Whereas the revelant connections with the State of New York of these trusts are all those already mentioned, in addition to references in article second of the indenture to investment in real estate and real estate mortgages in the State of New York and in bonds, obligations or securities of the State of New York or of the City of New York (there being no references in the indentures to the State of New Jersey other than the recitals as

to residences of the parties). Therefore the court holds that the construction of the trust agreements must be made in accordance with New York law.

It is necessary to examine article second of each indenture in order to consider and determine the questions pertaining to instructions sought. They are alike and read: " Second: To sell, convey and transfer the personal estate and securities hereby transferred, or any part thereof, and any real and personal estate which may hereafter form any part of the trust hereunder, or which may be purchased under the powers hereinafter given, from time to time, and upon any such sale, conveyance or transfer to make and execute all proper instruments and transfers thereof, and thereafter to invest the proceeds in real estate or in bonds secured by mortgage upon real estate in the State of New York, or elsewhere, or in bonds, obligations or securities of the State of New York or of the City of New York or of any City of the United States, or in bonds, stocks or securities of railroad or other public corporations, it being the intention hereof that the Trustees shall not be confined to legal investments, so-called, which are not, however, actually prohibited, but that the funds may, in the discretion of the Trustees, be invested in securities which may, be deemed reasonably safe and which will produce a better income than trust investments; and the said trustees shall be at all times freed from any loss or damage in any form arising from the retention of the securities herein described in Schedule A, or the sale or purchase of any such real or personal estate sold or purchased as herein provided."

Under New York law, the question of governing law for allocation of dividends has been held to be one of construction (*Bank of New York* v. *Shillito,* 14 N. Y. S. 2d 458; *Matter of Pratt,* 1 Misc 2d 428) and the question of what receipts are allocable to income and what to principal is a question of administration. The court holds that the allocation of stock dividends between principal and income shall be made in accordance with the New York rule (see *Matter of Osborne,* 209 N. Y. 450, 477).

It is clear that the trustees were not to be confined to legal investments but might in their discretion invest in securities deemed reasonably safe which would produce a better income than legal investments, and in furtherance of that purpose that they might in their discretion invest in " bonds, stocks or securities of railroad *or other public corporations*" (italics added). It is obvious that the settlor did not use the phrase " public corporation " in the sense of governmental corporation. The word " other " indicates that the settlor deemed a railroad corpora-

tion to be a "public corporation". Practically all of his holdings were in railroad corporations. It would seem that the settlor meant to authorize investment in stocks of corporations engaged in communications, transportation, electric and water power, natural gas, and other public utilities, which were, like the railroads, regulated by the Government in such matters as rates, and were considered to be performing a public service. It may be argued that the phrase "public corporation" can reasonably be construed in a broader sense to mean any corporation the stock of which is not closely held but which is purchased and sold by the general public in the open market and that the rule of *ejusdem generis* should not be applied to investment provisions similar to those contained in these indentures of trust. Cases cited for such a holding, *Irving Trust Co.* v. *Natica, Lady Lister-Kaye* (157 Misc. 32, *supra*) and *Matter of Singer* (90 N. Y. S. 2d 575) are not deemed controlling to the situations here presented.

It is clear that the settlor had no intention of prohibiting investment in "legal" securities. In enumerating specific permissible investments in article second of the trust indentures, the settlor intended that the trustee should not be "*confined to legal investments, so-called, which are not, however, actually prohibited*" (italics added).

The court construes article second of each trust indenture to permit investment in securities legal for trustees, under the government laws of the trusts, including those provisions of New Jersey and New York which permit a certain percentage of a trust fund to be legally invested in common stocks.

The trustee had administered two funds under each trust indenture. One fund consists of the property and reinvestments of the property transferred by the settlor at the time the trust was created. The second fund consists of property bequeathed to the trustee as trustee under the said trust indentures, by the settlor's last will and testament and the codicil thereto.

The funds can properly be mingled if they form a part of a single trust. It is a question of interpretation whether the settlor intended to create a new trust or to add to an existing trust (2 Scott, Trusts, § 179.2). Here, it is clear that the settlor intended to add to an existing trust. By article fifth of each trust indenture the settlor specifically reserved the right by "Last Will and Testament to add other property or securities to the Trust which shall thereupon be held and disposed of upon the same trusts as are herein provided." In the codicil to his will the settlor specifically identified the trust indentures and referred to his reserved power to add other property or securi-

ties to the principal of the trusts therein created and in each instance made a bequest to the trustee, as trustee of a sum to be received, held and disposed of "upon the same trusts as are provided in said instrument".

The trustee received the bequests and released and discharged the executors of the settlor's estate. No letters of trusteeship were ever issued to the trustee by the Surrogate's Court in New Jersey, which admitted the will and codicil to probate, and the trustee has never accounted to that court as a testamentary trustee with regard to the bequests.

It is stated in Restatement of the Law, Trusts, 2nd (vol. 1, § 54, comment $k$): "Where a testator who has created a trust inter vivos leaves property by his will to be added to the trust, a single trust is thereby created. This trust will be administered as an inter vivos trust, and not as a testamentary trust, since the trust is not created by will, although property is added by the will to the trust. This is true even though there is no provision in the terms of the inter vivos trust authorizing the settlor to add property to the trust". (See, also, 1 Scott, Trusts, § 54.3, pp. 382–383; *Matter of Rausch*, 258 N. Y. 327.)

The court holds that the settlor intended to add and added property by the codicil to his will to existing trusts and did not create separate trusts of the property. It is therefore permissible for the trustee to commingle the two separate funds held under each trust indenture and administer them as one trust fund under the terms of the three trust indentures.

The motions to judicially settle the intermediate accounts of proceeding of the trustee of the three express trusts are granted as herein indicated. Settle order providing for the constructions as determined by the court and for the settlement of the accounts.