[No. 38497.     En Banc.     January 12, 1967.]

THE STATE OF WASHINGTON, *Respondent*, v. HERMAN MOSES
et al., *Appellants*, THE DEPARTMENT OF FISHERIES
*et al., Respondents.**

*Frederick W. Post*, for appellants.

*Charles O. Carroll, Jack A. Richey, The Attorney General* and *Joseph L. Coniff, Assistant*, for respondents.

HILL, J.—This is an action involving claimed off-reservation treaty fishing rights by Indian defendants; and it is a companion case to that of the Puyallup Indians (*ante* p. 245, 422 P.2d 754) and of the Nisqually Indians (*ante* p. 275, 422 P.2d 771), filed today but presenting a different facet of the problem.

The action was commenced by the State of Washington on the relation of Charles O. Carroll, as Prosecuting Attorney of King County, Washington, against 15 individual de-

*Reported in 422 P.2d 775.

fendants, asking that they be enjoined from obstructing fish runs on the Green River and its tributaries. It was alleged that the defendants were sweeping the river with fish nets and preventing any substantial escapement and that, unless enjoined, the run of the fish in the river would be depleted and cease to exist. Thereafter the Department of Fisheries of the State of Washington and the Department of Game of the State of Washington, hereinafter called the Departments, intervened as plaintiffs.

The individual defendants answered, as did the Muckleshoot Tribe, alleging that all of the defendants were members of that tribe and were, in fishing on the Green River, exercising their rights under article 5 of the Point Elliott Treaty of January 22, 1855 (12 Stat. 927).[1]

The prayer of the answer also asked:

A. For a decree declaring that the Muckleshoot Tribe is composed of Indians who are descendants of three of the bands of Indians mentioned in the preamble to the Point Elliott Treaty as the Smalh-kahmish, Skope-ahmish, and St-kahmish; that said bands are parties to the said treaty; and that under its present name of Muckleshoot the tribe and its members are entitled to fish on the Green River within the area of its ancestral lands, described above, in the usual and accustomed manner employed by the three said bands during "pre-white times."

B. Judgment against the State of Washington in the sum of $3,180,000 for damages sustained through loss of use of its (Muckleshoot Tribe's) fishing location on "Soos" Creek since the year 1901; a decree enjoining the State of Washington officials from preventing the Muckleshoot Tribe from fishing at "Soos" Creek fish hatchery location, or in the alternative, that it have judgment in the sum of $1,500,000.

---

[1] "The right of taking fish at usual and accustomed grounds and stations is further secured to said Indians in common with all citizens of the Territory, and of erecting temporary houses for the purpose of curing, together with the privilege of hunting and gathering roots and berries on open and unclaimed lands, Provided, however, that they shall not take shell-fish from any beds staked or cultivated by citizens."

At the trial, 36 witnesses testified[2] and 53 exhibits were offered. The trial court made some 31 findings of fact and entered a decree permanently enjoining the individual defendants and all members of the Muckleshoot Tribe from fishing in the Green River in any manner that is contrary to the rules and regulations of the Departments.

From this decree, entered on January 11, 1965, the individual defendants and the Muckleshoot Tribe gave timely notice of appeal.

Not until April 13, 1966, some 14 months later, did the appellants file a brief. Five assignments of error were made, and will be discussed.

The respondents in their brief called attention to the fact that no error had been assigned by the appellants to any of the 31 findings of fact made by the superior court and invoked Rule on Appeal 43,[3] which provides that the findings of fact made by the trial court will be accepted as the established facts in the case unless error is assigned thereto.

The appellants filed a reply brief setting out verbatim 15 findings of fact to which error was assigned. A like effort, in *Hill v. Tacoma*, 40 Wn.2d 718, 246 P.2d 458, to belatedly comply with that rule in a reply brief, was unsuccessful. In *Paulson v. Higgins*, 43 Wn.2d 81, 83, 260 P.2d 318 (1953), we stated:

> This court has held without exception that failure to comply with Rule 43, *supra,* will make the findings of fact the established facts of the case. (citing 19 cases.)

> If there is to be a rule, there must be a point at which failure to comply therewith can no longer be corrected.

---

[2]The two-volume Statement of Facts contained in excess of 550 pages of testimony.

[3]"No alleged error of the superior court will be considered by this court unless the same be definitely pointed out in the 'assignments of error' in appellant's brief. In appeals from all actions at law or in equity tried to the court without a jury, the findings of fact made by the court will be accepted as the established facts in the case unless error is assigned thereto. No error assigned to any finding or findings of fact made or refused will be considered unless so much of the finding or findings as is claimed to be erroneous shall be set out verbatim in the brief. . . ." Rule on Appeal 43.

*That point is the filing of respondent's brief.* (Italics ours.)

The findings of fact made by the superior court must be accepted as the established facts of this case. We shall refer to them only as they may be of assistance in understanding the holdings of the trial court.

A brief statement of the basis for the superior court's judgment and decree will be helpful as a background for consideration of the assignments of error.

1. The trial court concluded that the Muckleshoot Tribe of Indians, as such, had no rights under the Point Elliott Treaty.[4] The undisputed evidence was that there never was such an aboriginal tribe; it was made up of a number of different tribes and bands which were placed on an abandoned military post at a place known as "Muckleshoot Prairie" at times subsequent to the Point Elliott Treaty. (It was conceded by counsel at the oral argument that the name "Muckleshoot" was not Indian; that the "Muckle" came from the Scotch, and that it was the name given to a particular locality.) Not until the 1860-69 decade can any reference be found to this synthetically created tribe as the "Muckleshoots," and not until 1870 were the Indians on this reservation first referred to (in United States Agency correspondence) as the "Muckleshoot Tribe."

Nor is there support in the record for the contention (see A of the prayer of defendants, page 277 of this opinion) that all of the present Muckleshoot Tribe is descended from three bands of Indians mentioned in the preamble of the Point Elliott Treaty (*i.e.*, Smalh-kahmish, Skope-ahmish, and St-kahmish) "as being contracting parties."

Although mentioned in the treaty, there is no contention that any of the three named tribes was signator thereto. It is suggested, but not established, that Chief Seattle signed

---

[4]It would appear that the Muckleshoot Tribe, as such, is not certain whether its members are treaty Indians. In its claim, filed with the Indian Claims Commission, its representation was that its members were not treaty Indians, and it asked compensation for the unlawful taking of tribal lands. See 79 Ct.Cl. 569 (1934).

for them. While after the signature[5] of each Indian on the treaty there appeared the name of the specific tribe or tribes he represented, to some were added the words "and other tribes," or "and other allied tribes." Chief Seattle signed only as "Chief of the Dwamish and Suquamish Tribes."

2. The trial court concluded that the 15 individual defendants were descendants of the Skope-ahmish Tribe, *supra*, but that they had no rights under the treaty because the Skope-ahmish Tribe did not sign the treaty and no one signed it in its behalf. Finding of Fact No. 20 was:

> That the Skope-ahmish Indians were named in the preface of the Treaty of Point Elliott but they did not sign the treaty and no other Indians signed on their behalf.

3. The trial court concluded that if the individual defendants did have rights under the Point Elliott Treaty, they were subject to restriction in the exercise of those fishing rights by state conservation regulations which were reasonable and necessary to the conservation of the fishery, and that their net fishing was in violation of such regulations.

■ With reference to these three conclusions of the trial court, it seems to us clearly established that the then nonexistent Muckleshoot Tribe, as such, had no treaty rights; that the individual defendants, as Skope-ahmish descendants, failed to establish that their tribe was signatory to the Point Elliott Treaty and, hence, failed to establish that they had any rights thereunder.

Had they established such rights, it would have been necessary, as in the Puyallup case, *supra*, to limit the injunction to their particular methods of fishing which threatened the continued existence of the fishery; but not having established the existence of any treaty rights, they, like all other citizens, are subject to the conservation regulations adopted by the Departments and, hence, the injunction as entered is proper.

---

[5]All signed with an "X."

Having discussed the overriding issues, we now turn to a consideration of the five assignments of error made by the appellants.

The first assignment is that the trial court erred in not accepting the testimony of George M. Felshaw, Superintendent of the Western Washington Indian Agency, Bureau of Indian Affairs, to the effect that the Muckleshoot Tribe were treaty Indians.

We agree with the trial court that it was not bound by the opinion of Mr. Felshaw, or his testimony as to the views of his superiors that the members of the Muckleshoot Tribe are treaty Indians—the evidence being undisputed that such a tribe was not even in existence at the time the treaty was signed. Nor does the fact that three of the numerous groups that became part of the Muckleshoot Tribe were named in the Treaty of Point Elliott but did not sign it, confer treaty status on all members of the Muckleshoot Tribe.

The second assignment of error is that the trial court refused to permit Malcolm S. McLeod to testify.

Mr. McLeod did testify at length with reference to certain matters, and identified certain exhibits. It was only as an expert that his further testimony would have been of value to the defendants. In view of the fact that the trial court found the individual defendants to be descendants of the Skope-ahmish Tribe and members of that tribe for the purposes of this action, the failure to permit Mr. McLeod to testify as an anthropological expert was not prejudicial. There was nothing in the offer of proof to indicate to the trial court in what way his qualifications as an historical expert would be material.

The trial court quite frankly advised counsel that it could not give any weight to Mr. McLeod's expert testimony, stating:

I am satisfied that he is so intimately connected with it [litigation concerning Indian rights and compensation for the taking thereof] that it would be a waste of your time and the Court's time to have his testimony taken.

. . . .

> You can't live with something, as Mr. McLeod has done for a great number of years, without being biased and prejudiced in favor of it. That is human nature. And the Court will so have to discount his testimony. It wouldn't be fair to your clients to have him used.

There was an overnight recess, following the refusal of the trial court to permit Mr. McLeod to testify, which gave the defendants an opportunity to secure other expert testimony if they so desired. No prejudice has been shown by the failure to permit Mr. McLeod to testify as an expert.

The third assignment of error is the refusal of the trial court to be bound by the rule of law stated by the United States Circuit Court in *Maison v. Confederated Tribes of the Umatilla Indian Reservation*, 314 F.2d 169 (9th Cir. 1963): That the regulation of fishing by Indians having treaty rights is permissible only when such regulation can be shown to be "indispensable" to the conservation of the fishery.

We do not reach this particular assignment of error under the holding that neither the individual defendants nor the Muckleshoot Tribe have any rights under the Treaty of Point Elliott.

However, if the defendants had established fishing rights under the treaty, we would agree with the trial court that a requirement that a state regulation must be "indispensable" to the conservation of the fishery before it can be enforced against treaty Indians is neither good law nor presently binding upon the State of Washington. This issue has been discussed in the companion *Puyallup* case, *supra*, filed this day, and repetition of the views therein expressed is unnecessary. The trial court applied the proper rule in determining whether the regulations were such as could be enforced as against the treaty rights of the individual defendants to fish "at usual and accustomed grounds and stations."

The fourth assignment of error is that the trial court failed to recognize "That the Muckeshoots Are Treaty Indians Is Established by the Doctrine of *Res Adjudicata*."

■ The contention—that the status of the Muckleshoots, as treaty Indians, was established by a superior court holding to that effect (in a criminal action that never reached the Supreme Court)—is completely without merit. The nature of the action is different—an equity case instead of a criminal case; the parties are different; the issues are different; and the status of persons for or against whom the claim is made is different. See *State ex rel. Cooper v. Warnock*, 16 Wn.2d 697, 134 P.2d 706 (1943), and cases cited therein.

The fifth and final assignment of error was the dismissal of the defendants' counterclaim.

When the trial court held that the Muckleshoot Tribe, as such, had no treaty with the United States, the dismissal of its counterclaim for $3,180,000 and $1,500,000 necessarily followed. Claims against the state were not filed; but we do not pass upon the further contention by the respondents that such claims against the state must be filed as a prerequisite to any action thereon (RCW 4.92.110).

The decree appealed from is affirmed.

FINLEY, C. J., WEAVER, ROSELLINI, and HAMILTON JJ., and LANGENBACH, J. Pro Tem., concur.

DONWORTH, J. (concurring in the result)—Since, because of appellants' failure to comply with Rule on Appeal 43, this court must accept the trial court's findings of fact as the established facts of this case, the only result that can be reached is that appellants do not have, and never have had, any rights under the Treaty of Point Elliott, and hence there is no legal basis for appellants' claim. *State v. Quigley*, 52 Wn.2d 234, 324 P.2d 827 (1958).

Appellants are in no different position with respect to fishing rights than non-Indians are. I, therefore, concur in the affirmance of the trial court's injunctive decree.

HUNTER, J. (dissenting)—I dissent. The issue of recognizing the "Muckleshoots" as descendants of the signatories of

the treaties of 1854 and 1855 is necessarily a federal question. This court is acting without jurisdiction in making that determination.

HALE, J., concurs with HUNTER, J.