[No. 2075-2. Division Two. February 2, 1977.]

CHRISTOPHER T. BAYLEY, ET AL, *Respondents*, v. HILDA KANE, ET AL, *Appellants*.

*Fred H. Dore, Albert G. Lirhus,* and *Dore, Dubuar & Lirhus,* for appellants.

*Christopher T. Bayley, Prosecuting Attorney, John E. Keegan, Deputy, Slade Gorton, Attorney General,* and *Robert V. Jensen, Assistant,* for respondents.

PEARSON, J.—Defendant, Mrs. Hilda Kane, appeals from a judgment and order of abatement requiring the removal of certain improvements and landfill from her property. The issues on appeal are first, whether defendant violated the state flood control zones act, RCW Title 86, the Shoreline Management Act of 1971, RCW 90.58, or the state hydraulics act, RCW 75.20, thereby justifying an order of abate-

ment; and second, whether the judgment improperly delegated the trial court's authority or is unenforceably vague. For the reasons stated below, we affirm the judgment as modified.

The record reveals that in 1968 King County delivered 110 tons of rock to Mrs. Kane to help stabilize a concrete retaining wall which Mrs. Kane had built east to west across her King County property, between her house and the adjacent Cedar River. The county was authorized to perform such acts under a flood control permit issued by the state. In May 1971 Mrs. Kane applied for a flood control permit to allow her to further develop the river bank. No error is assigned to the reasonableness of the state's denial of defendant's flood control permit application. While she was without a permit, she constructed a concrete bulkhead and a fence south of the existing retaining wall, along the eastern edge of her property. Mrs. Kane also placed fill material on the river side of the concrete retaining wall, including a concrete rubble wall. No flood control permit was ever issued to Mrs. Kane.

In 1973 King County and the State Department of Ecology brought this action seeking abatement of a public nuisance, alleging that Mrs. Kane had not obtained the permits necessary for her development of the river bank. The matter was tried before the court and on May 17, 1974, a judgment was entered ordering that the bulkhead, the fence, and the landfill on the river side of the cement retaining wall be removed by Mrs. Kane.

First of all, plaintiffs object to the fact that defendant challenges several of the trial court's findings of fact, without setting forth findings verbatim in the brief as required by CAROA 43. Defendant's opening brief does paraphrase the findings to which she objects and the alleged erroneous findings are set out verbatim in the reply brief. Plaintiffs' objection is well taken. The mere paraphrasing of challenged findings does not satisfy CAROA 43, *Mayo v. Jones*, 8 Wn. App. 140, 505 P.2d 157 (1972), nor does the attempt to cure the defect by setting forth the

alleged erroneous findings in the reply brief suffice. *St. Luke's Evangelical Lutheran Church v. Hales*, 13 Wn. App. 483, 534 P.2d 1379 (1975). Additionally, as discussed below, our review of the record persuades us that each of the challenged findings is supported by substantial evidence. Accordingly, the findings would be affirmed in any event. *State v. Smith*, 84 Wn.2d 498, 527 P.2d 674 (1974).

 Second, plaintiffs correctly point out that while the court's order of abatement is based upon three separate but related environmental enactments, such order should be affirmed if there is a sufficient showing of a violation of any one of the three statutes. This is true because each of the three statutes provides for abatement in the event of a violation, if the other stated conditions for injunctive relief are met.

Since we are convinced that an abatement order was proper under RCW 86.16, the state flood control zones act, we do not consider the applicability or propriety of an abatement order based upon the Shoreline Management Act of 1971, RCW 90.58, and the state hydraulics act, RCW 75.20.

The flood control zones act was enacted in 1935. Its broad scope and purpose are contained in RCW 86.16.010:

> The alleviation of recurring flood damages to public and private property, to the public health and safety, and to the development of the natural resources of the state is declared to be a matter of public concern, and as an aid in effecting such alleviation the state of Washington, in the exercise of its sovereign and police powers, hereby assumes full regulatory control over the navigable and nonnavigable waters flowing or lying within the borders of the state subject always to the federal control of navigation, to the extent necessary to accomplish the objects of this chapter.[1]

To carry out these purposes, authority was delegated to the state supervisor of flood control (the function of whom has now been assumed by the Department of Ecology, pur-

---

[1] The provisions of the chapter and all proceedings thereunder are to be liberally construed to effect their objective. RCW 86.16.900.

suant to RCW 43.21A.060(2)) to establish a permit system within the guidelines furnished by RCW 86.16.080:

> *No person*, firm, association or.corporation, public, municipal or private, *shall have the authority or the right hereafter to construct, reconstruct, or modify any structure or works affecting flood waters within any flood control zone*, established under the provisions of this chapter, or to operate or maintain any such structure or work hereafter constructed, reconstructed or modified *without a written permit from the state supervisor of flood control* applied for and issued in accordance with such general rules and regulations as shall be established and promulgated for the purpose under the provisions of this chapter:

(Italics ours.)

Rule-making authority was delegated to the supervisor (now the Department of Ecology) by RCW 86.16.027. Two rules adopted pursuant to that authority are pertinent to our review. The terms "structures and works" were defined by WAC 508-60-010(7) and (8):

> (7) "Structure" shall mean any building, house, apartment, factory or other structure attached to or affixed upon the realty;
>
> (8) "Works" shall mean any dam, wall, wharf, embankment, levee, dike, pile, bridge, improved road, abutments, projection, excavation, channel rectification, conduit, culvert, wire, fence, rock, gravel, refuse, fill or other similar development attached to or affixed upon the realty;

Pursuant to RCW 86.16.025, the Department of Ecology may examine, approve, or reject designs and plans for any structure or works upon the banks, in the channel, or over the flood plain or floodway of any stream or body of water in the state. The criteria for approval of flood control zone permits are contained in WAC 508-60-040:

> FLOOD CHANNEL AND FLOODWAY USAGE. All complete applications for flood control zone permits that request authorization for the construction, reconstruction, or modification of any works or structures upon the floodway or over or in the channel of any body of water or drainway will be examined by the department to insure compliance with all of the following requirements:

(1) The structures or works are designed so as not to be appreciably damaged by flood waters;

(2) The structures or works shall be firmly anchored or affixed to the realty in order to prevent dislocation by flood water and damage to life, health and property.

(3) The structures or works will not adversely influence the regimen of any body of water by restricting, altering, hindering or increasing flow of the flood waters in the floodway or flood channel expected during a flood up to a magnitude of a one hundred year [formerly "fifty year"], frequency. (In consideration of this provision the department shall determine whether the structures or works either alone, or in combination with existing or future similar works could adversely influence the efficiency or the capacity of the floodway or adversely affect existing drainage courses or facilities. The determination of these effects shall be based on the assumption that the floodway encroachment resulting from any proposed structures or works will extend for a significant reach of the stream together with an encroachment equal in degree on the opposite side of the stream.); and

(4) The structures or works are not designed for, or will not be used for either (a) human habitation of a permanent nature or (b) uses associated with high flood damage potential.

Any application for a permit which complies with all requirements of this section and the provisions of WAC 508-60-060 and WAC 508-60-070 will be granted.

It is not denied that defendant's bulkhead and landfill were a structure or works as defined in WAC 508-60-010. It is undisputed that defendant's entire property is within a flood control zone. It is also undisputed that the Department of Ecology reviewed an application by defendant dated May 14, 1971, and denied a permit on grounds that the proposed bulkhead and landfill were inconsistent with the criteria contained in WAC 508-60-040. Nevertheless, defendant proceeded with the unauthorized "works and structures," despite both verbal and written warnings.

At the trial there was sufficient evidence in the form of expert testimony augmented by picture and map exhibits to support the trial court's finding that the construction was within the flood zone of the river and that it would

adversely influence the regimen of the river. The experts also concluded that the structure was within the natural channel of the Cedar River, would narrow the channel so as to increase the velocity of the river downstream, and the cumulative impact of allowing all property owners on the Cedar River in the vicinity of defendant to undertake similar projects as her construction might necessitate, would create a severe flood hazard problem. The expert opinions also were sufficient to establish that defendant's construction works were not designed to avoid damage or dislocation by flood waters.

This testimony was clearly sufficient to support a finding and conclusion that defendant's bulkhead and landfill were in violation of the act, so as to warrant abatement. RCW 86.16.090. *See Bach v. Sarich*, 74 Wn.2d 575, 445 P.2d 648 (1968); *Wilbour v. Gallagher*, 77 Wn.2d 306, 462 P.2d 232, 40 A.L.R.3d 760 (1969).

■ Defendant's principal contention is that the occurrence of a severe flood in 1975, subsequent to the trial, established evidence sufficiently persuasive on the issues involved in the case as to require a vacation of the judgment on grounds of newly discovered evidence. Her contention is that the 1975 flood was a 70-year frequency flood and that the structure and works were not in violation of RCW 86.16 because the flood waters did not overflow the new bulkhead and landfill. Even if this evidence were considered, it would not change the result. The issue is not whether a 50-year flood (note WAC 508-60-040(3), *supra*) would in fact cover the structure in question, but whether the structure affects the waters in the flood zone. RCW 86.16.080. If anything, the offered evidence more dramatically illustrates the effect of this structure on river banks in the vicinity of defendant's property. Since the new evidence would not affect the results of the trial, it was not error to deny the motion to vacate. *State v. Franks*, 74 Wn.2d 413, 445 P.2d 200 (1968).

It is our conclusion that the judgment of abatement should be affirmed. However, the abatement order should

be modified to provide a more clearly defined method of abatement. Accordingly, the judgment should be modified to provide:

Within 90 days of the mandate, defendant shall submit to the Department of Ecology a proposed plan of abatement. If no objection to the plan is made to the Superior Court, the plan shall be carried out within a time schedule detailed in the plan. Defendant's plan may, if she desires, include provision for retention of the 110 tons of rock delivered by King County under their flood control permit for the purpose of stabilizing the preexisting concrete retaining wall. If the Department of Ecology objects to the proposed plan of abatement, the department may bring the issue to the Superior Court by a motion and order to show cause. Thereafter the trial court shall determine the issue in a manner consistent with the objects of RCW 86.16.010.

Affirmed as modified. Each party will assume his or her own costs on appeal.

PETRIE, C.J., and REED, J., concur.