Marguerite Janice WITMER, et al., Appellants,

v.

Jane Ann BLAIR, Trustee, Respondent.

No. 30319.

Missouri Court of Appeals, Western District.

Oct. 1, 1979.

Wendell E. Koerner, Jr., Larry E. Scott, St. Joseph, for appellants; Brown, Douglas & Brown, St. Joseph, of counsel.

William Rosenthal, St. Joseph, for respondent.

Before WASSERSTROM, C. J., and WELBORN and MASON, Special Judges.

ROBERT R. WELBORN, Special Judge.

Plaintiffs, beneficiaries of a testamentary trust, filed a two-count action against defendant trustee, seeking an accounting, removal of the trustee, and actual and punitive damages for breach of fiduciary duties. After trial to the court, the court ordered an accounting and removal of the defendant as trustee and entered judgment against defendant for $309 for unaccounted for funds but found against plaintiffs on their claim for damages for breach of fiduciary duties. Plaintiffs appeal from this portion of the decree.

By his Last Will and Testament, Henry F. Nussbaum made a residual bequest and devise of his estate to his niece, Jane Ann Blair, as trustee, "in Trust however, for the education of my grandchildren (children of my daughter, Dorothy Janice Witmer) living at the time of my decease, or born within a period of nine months thereafter." In the event that none of his grandchildren survived to inherit the estate, the residue would revert to plaintiff Dorothy Janice Witmer, his daughter and first cousin of defendant trustee.

Nussbaum died in 1960. The trust estate came into the hands of the trustee in 1961. It consisted of $1,905 in checking and savings accounts, $5,700 in certificates of deposit and a house valued at $6,000.00. The house was sold in 1962, netting $4,467 to the trust estate. That amount was deposited in a trust checking account. In 1963, $2,000 in certificates of deposit were acquired by the trust and $500 was so invested in 1964. As of December 31, 1970, the trust fund assets consisted of $5,847 in checking account, $506 in savings account and $8,200 in certificates of deposit. In 1971 and 1972, the checking account balance was reduced by transfers to the savings account and on December 31, 1975, the trust assets consisted of $2,741 checking account, $5,474 savings account and $8,200 certificates of deposit.

Plaintiff-appellant Marguerite Janice Witmer was the only grandchild of the testator who became a beneficiary of the trust. She was born September 3, 1953. At the time of the trial, she was 23 years of age. She had not attended a college or university. However, various sums of money had been expended from the trust for her benefit, including a typewriter, clothes, glasses, modeling school tuition and expenses and a tonsillectomy. These expenditures totalled some $1,225.00. The trust also provided $350 for dentures for the mother, Dorothy Witmer.

The trust was handled by appellant rather informally. She kept no books for the trust. The expenditures above mentioned were in most cases advanced by her from her personal account and she reimbursed herself from the trust income. In 1965, the bank erroneously credited the trust account with $560 which should have gone to the trustee's personal account. The mistake was not corrected and that amount remained in the trust account. The trustee received no compensation for her services. Asked at the trial whether she had ever been a trustee before, she responded negatively, adding: "And never again." She explained the large checking account balances in the trust account by the fact that

college for Janice "was talked about all the way through high school. * * * [I]n my opinion it was the sensible way to keep the money where I could get it to her without any problems at all in case she needed it quickly."

An accountant testified for plaintiffs that if the sum of $800 had been kept in the checking and savings accounts (the $800 was based upon the maximum disbursement in any year) and the balance of the trust placed in one-year certificates of deposit, $9,138 more interest would have been earned as of September 30, 1976, from the trust estate than had been received under respondent's handling of the trust.

As above recited, the court removed the trustee and surcharged her account for $309 in unexplained expenditures, but refused the claim for actual and punitive damages for breach of trust by failure to invest the trust funds. The trial court made no findings of fact or conclusions of law on the latter issue. Appellants make no reference in this court to the claim for punitive damages and it is deemed abandoned.

In this court, appellants contend that the respondent as trustee was bound to comply with the directions of the trust that she "invest the principal and re-invest the same" and that her failure to invest the trust corpus constituted a breach of her fiduciary duty for which she is liable. The respondent answers that inasmuch as the will failed to specify when and what investments were to be made, such matters were left to the discretion of the trustee and that she exercised such discretion honestly, with ordinary prudence and within the limits of the trust and is not liable for damages.

A concise summary of the law applicable in this situation appears in 76 Am.Jur.2d Trusts § 379 (1975):

"It is a general power and duty of a trustee, implied if not expressed, at least in the case of an ordinary trust, to keep trust funds properly invested. Having uninvested funds in his hands, it is his duty to make investments of them, where at least they are not soon to be applied to the purposes and objects or turned over to the beneficiar-

ies of the trust. Generally, he cannot permit trust funds to lie dormant or on deposit for a prolonged period, but he may keep on hand a fund sufficient to meet expenses, including contingent expenses, and he need not invest a sum too small to be prudently invested. A trustee ordinarily may not say in excuse of a failure to invest that he kept the funds on hand to pay the beneficiaries on demand."

"The trustee is under a duty to the beneficiary to use reasonable care and skill to make the trust property productive." Restatement (Second) of Trusts § 181 (1959). Comment c to this section states:

"*Money.* In the case of money, it is normally the duty of the trustee to invest it so that it will produce an income. The trustee is liable if he fails to invest trust funds which it is his duty to invest for a period which is under all the circumstances unreasonably long. If, however, the delay is not unreasonable, he is not liable."

"A breach of trust is a violation by the trustee of any duty which as trustee he owes to the beneficiary." Restatement (Second) of Trusts § 201 (1959). Comment b to this section states:

"*Mistake of law as to existence of duties and powers.* A trustee commits a breach of trust not only where he violates a duty in bad faith, or intentionally although in good faith, or negligently, but also where he violates a duty because of a mistake as to the extent of his duties and powers. This is true not only where his mistake is in regard to a rule of law, whether a statutory or common-law rule, but also where he interprets the trust instrument as authorizing him to do acts which the court determines he is not authorized by the instrument to do. In such a case, he is not protected from liability merely because he acts in good faith, nor is he protected merely because he relies upon the advice of counsel. Compare § 297, Comment *j.* If he is in doubt as to the interpretation of the instrument, he can protect himself by obtaining instructions from the court. The extent of his duties and powers is determined by the trust in-

strument and the rules of law which are applicable, and not by his own interpretation of the instrument or his own belief as to the rules of law."

Under the above rules, there has been a breach of trust by the trustee in this case and her good faith is not a defense to appellants' claim. When the respondent came into possession of the trust estate in 1962, appellant Marguerite was some nine years of age. Respondent was acquainted with her and was aware of her age. Obviously there was no prospect of the beneficiary's attending college for a number of years. Respondent's failure to invest a large portion of the trust corpus during such time may not be justified on the grounds that during such time she acceded to requests of the beneficiary's mother to provide small sums for the beneficiary or her mother. Respondent's brief acknowledges that such expenditures were not authorized under the trust. A breach of duty by the trustee in that regard cannot justify her further breach of duty to invest the trust corpus.

However, when Marguerite became of college age and was considering a college education, the respondent should not be faulted for keeping readily available a sum of money which would permit the use of the trust fund for such purpose. Marguerite was somewhat less than candid regarding her college plans. She stated that in 1972 when she went to the modeling school, " * * * we had talked about [going to college] but * * * I wasn't sure what I wanted to do. There was a chance I could have gone to college and a chance I couldn't have. There was no definite talk either way." However, her mother, in a letter dated February 6, 1972, had told respondent:

"Jan (Marguerite) has still been inquiring about C. U. Extension and Denver University and Arapahoe Jr. College with the idea of possibly starting this fall semester. She still wants more schooling. For this I am so thankful."

It may be conceded that at sometime thereafter respondent should have become aware that college was not realistically in Marguerite's plans and should have handled the Trust accordingly. However, in 1971 and 1972 she did substantially reduce the trust checking account by transfer to the interest-bearing savings account.

The accountant who testified for appellants calculated that between the opening of the Trust and 1971, when college for Marguerite would have been a realistic possibility, had the trust funds, in excess of $100 checking account and approximately 800–1,000 savings account, been invested in one-year certificates of deposit, the trust would have earned additional interest of $2,840.00. In view of the trustee's transfer of a substantial portion of the checking account balance to savings in 1971 and 1972 and in view of the relatively small difference between the return from savings and what might have been earned from certificates of deposit (½% to 1½%), no damages should be assessed against the trustee for the handling of the estate during that period. However, the trustee should be held liable for the $2,840 which, according to the measure of damages, invoked by appellants, might have been earned by investment of the trust between 1962 and 1971.

Judgment reversed as to Count II of plaintiffs' petition insofar as it denied plaintiffs' claim for actual damages. Remanded with directions to enter judgment for plaintiffs on Count II for $2,840 actual damages.

Reversed and remanded with directions.

All concur.