[No. 6404-2-III. Division Three. May 15, 1986.]

BAKER BOYER NATIONAL BANK, *Appellant,* v.
RICHARD GARVER, ET AL, *Respondents.*

674

*W. L. Minnick* and *Minnick, Hayner & Zagelow,* for appellant.

*Gary Schrag, Kristian Hedine,* and *Reese, Baffney, Schrag & Siegle,* for respondent Richard Garver.

*Stephen Palken* and *Sorrell & Palken,* for respondents Russell and Gregory Garver.

MUNSON, J.—Baker Boyer National Bank appeals a judgment in which it was surcharged, as trustee, for failing

to properly diversify trust assets and for the unauthorized transfer of trust property. It contends the court erred: (1) in finding it failed to adequately diversify trust investments under the prudent person rule; (2) in not reducing the surcharge for the unauthorized transfer of the assets by the value of Richard Garver's life estate; (3) in granting Russell and Gregory Garver attorney fees; and (4) in denying trustee and attorney fees. Richard, Russell, and Gregory cross–appeal.

In 1960, Leonard R. Garver executed a will which also created and funded a pour–over trust. The trust instrument named the Bank as trustee and included certain farmland designated in Mr. Garver's will. Pursuant to the will, the testator's wife, Hazel, and son, Richard, received successive life interests in the farmland. The remainder interest in the farmland was given to Russell and Gregory Garver, Richard's sons and Mr. Garver's grandsons. The will further provided if Russell and Gregory had not reached the age of 25 upon Richard's death, the Bank was to hold the real property in trust until they reached that age.

Hazel B. Garver, by her will, left Richard a life estate in the residue of her estate including her community interest in the farmland. Upon the death of Richard, the remainder of Hazel's property was to pass in fee to Russell and Gregory. The Bank was to receive this remainder as trustee *only* if Richard's children were under the age of 25 when Richard died.

Leonard Garver died on July 17, 1964; Hazel Garver died on October 18, 1969. Russell and Gregory were under 25 years of age at the time both grandparents passed away. During the probate of these estates, Richard, as executor of each estate, sold two parcels of real property and invested the proceeds, approximately $194,000, primarily in tax–free municipal bonds.[1]

Subsequently, Richard petitioned for final accountings

---

[1]The propriety of this transaction is the subject of another lawsuit between Richard and his sons still pending in Walla Walla Superior Court.

and decrees of distribution in each estate. In Leonard's estate, the decree of distribution provided the cash and bonds, with a value of approximately $97,000, were to be held by the Bank in trust during Richard's lifetime, then to be distributed to Richard's children according to the provisions of Leonard's will. In addition, the Bank was retained as trustee over Russell and Gregory's remainder interest in the farmland.

In Hazel's estate, the other half of the tax–exempt bonds and cash, also totaling approximately $97,000, were distributed to the Bank as trustee of a newly created Hazel Garver Trust.[2] This decree of distribution provided for the contingent remainder in the remaining real estate to be placed in her trust. Both decrees of distribution provided all income from the trusts was to be paid to Richard during his lifetime.

The Bank accepted the trusteeship; each trust contained approximately $97,000 in tax–exempt securities and 846 acres of farmland. During the period of trust administration from 1973 until 1982, the Bank continued to invest in tax–exempt securities, upon the advice of Richard's attorney and his broker.

On May 28, 1975, Richard and the Bank as trustee of Leonard's trust conveyed approximately 5.44 acres of trust real estate to Betty Seavy. A correction deed was executed by the same parties in the same capacities in January of 1979. No bank records exist to explain the transaction and no bank officer had any recollection as to why the deeds were executed. No consideration was received for the deed.

In 1981, Richard, Russell, and Gregory requested the Bank to sell the bonds held in trust. The proceeds were to be used by Russell and Gregory to purchase Richard's interest in a parcel of real estate entitled the Hughes Ranch. The Bank refused to sell in an unfavorable market

---

[2]The interesting issue of how Richard set up a trust in his mother's name, years after her death, and named himself income beneficiary is apparently also part of the pending action.

and decided to resign as trustee. On March 29, 1982, the Bank requested the court approve its final accounting in each trust and appoint a successor trustee. Russell and Gregory, in answer to the Bank's petition, agreed, along with Richard, to become successor co–trustees. However, Russell and Gregory objected to the final accounting alleging the Bank had mismanaged the two trusts.

Following a hearing, the trial court, on June 11, 1982, appointed Richard, Russell, and Gregory as co–trustees, ordered the liquidation of all personal assets with the proceeds to be paid to Richard in exchange for his interest in the Hughes Ranch. The entire portfolio of tax–exempt bonds was sold at a loss of $63,750.[3]

Russell and Gregory subsequently amended their answer to the Bank's original petition; they alleged the Bank had failed to adequately diversify and failed to act impartially with respect to their interest as remaindermen. Russell and Gregory also moved to amend their original petition to include a cross claim against Richard. This motion was denied; they filed a motion for discretionary review with this court; that motion was denied. Trial was limited to the Bank's management of the trust assets.

The trial court found: (1) the Bank had acted unreasonably in concentrating investments almost exclusively in the tax–exempt, municipal bonds; (2) Russell and Gregory were injured by the Bank's failure to diversify the investment portfolio; (3) the Bank had no authority to transfer the 5.44 acres of farmland from Leonard's trust; and (4) Leonard's will provided for and intended that a vested remainder interest in real property was to be distributed to the trust. However, with respect to Hazel's trust, the remainder interest in farmland was a contingent interest; the Bank was to act as trustee only if Russell and Gregory were under 25 when Richard died. Thus, the Bank could have conveyed only a one–half interest in the 5.44 acres in 1975.

---

[3]The issue of whether the court's action constituted a "forced sale" is not raised on this appeal.

Russell and Gregory were awarded damages of $22,950 for the failure to diversify, $1,900 for the unauthorized transfer of the 5.44 acres, and attorney fees and expenses in the amount of $17,732. The Bank, Richard, and Russell and Gregory appeal.

## APPEAL OF THE BANK

First, the Bank contends the court erred in surcharging it, as trustee, $22,950 for investing primarily in fixed–income securities. The Bank asserts it did not have an absolute duty to diversify under the prudent person rule (RCW 30.24.020),[4] but if it did have such a duty, the diversification between the fixed–income, tax–exempt securities and equity investment of real property fulfilled this duty.

RCW 30.24.020 codified the prudent person rule:

General criterion specified. In acquiring, investing, reinvesting, exchanging, selling and managing property for the benefit of another, a fiduciary shall exercise the judgment and care under the circumstances then prevailing, which men of prudence, discretion and intelligence exercise in the management of their own affairs, not in regard to speculation but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of their capital. Within the limitations of the foregoing standard, and subject to any express provisions or limitations contained in any particular trust instrument, a fiduciary is authorized to acquire and retain every kind of property, real, personal or mixed, and every kind of investment specifically including but not by way of limitation, debentures and other corporate obligations, and stocks, preferred or common, which men of prudence, discretion and intelligence acquire for their own account.

Whether, under the prudent person rule, a trustee is required to diversify trust investments has not been resolved in Washington. *See Baldus v. Bank of Cal.*, 12 Wn. App. 621, 629 n.11, 530 P.2d 1350, *review denied*, 85 Wn.2d 1011 (1975). However, the weight of decisional and schol-

---

[4]Laws of 1955, ch. 33, § 30.24.020, p. 210. RCW 30.24.020 was amended by Laws of 1984, ch. 149 and recodified as RCW 11.100.020, effective January 1, 1985.

arly authority supports the view the trustee as a prudent person has a duty to diversify.[5] In regard to this obligation, the Restatement (Second) of Trusts § 228 (1959) provides:

> Except as otherwise provided by the terms of the trust, the trustee is under a duty to the beneficiary to distribute the risk of loss by a reasonable diversification of investments, unless under the circumstances it is prudent not to do so.

Comment *a* to this section explains:

> The trustee is under a duty to the beneficiary to exercise prudence in diversifying the investments so as to minimize the risk of large losses, and therefore he should not invest a disproportionately large part of the trust estate in a particular security or type of security. It is not enough that each of the investments is a proper investment . . .

■ The Bank cites several cases which it contends stand for the proposition there is no absolute duty to diversify trust investments. *See, e.g., In re Will of Kilmer,* 18 Misc. 2d 60, 186 N.Y.S.2d 120, 130–31 (Sur. Ct. 1959); *In re Estate of Knipp,* 489 Pa. 509, 414 A.2d 1007, 1009 (1980). *Baldus,* at 626, recognized this split of authority. However, reliance on these cases is misplaced. A close reading of these cases indicates a trustee has a general obligation to diversify, subject to at least two exceptions: (1) an express provision by the settlor relieving the trustee of the duty to diversify, or (2) the circumstances dictate that it is not

---

[5]Restatement (Second) of Trusts §§ 227, 228 (1959); 3 A. Scott, *Trusts* § 228 (3d ed. 1967 & Supp. 1984); G. Bogert, *Trusts and Trustees* § 612 (2d rev. ed. 1980); *In re Estate of Collins,* 72 Cal. App. 3d 663, 139 Cal. Rptr. 644 (1977); *Steiner v. Hawaiian Trust Co.,* 47 Hawaii 548, 393 P.2d 96 (1964); *In re Estate of Sanders,* 304 Ill. App. 57, 25 N.E.2d 923 (1940); *Indiana Trust Co. v. Griffith,* 176 Ind. 643, 95 N.E. 573 (1911); *Security Trust Co. v. Appleton,* 303 Ky. 328, 197 S.W.2d 70 (1946); *First Nat'l Bank v. Hyde,* 363 S.W.2d 647 (Mo. 1962); *Mazzola v. Myers,* 363 Mass. 625, 296 N.E.2d 481 (1973); *In re Irrevocable Inter Vivos Trust,* 305 N.W.2d 755 (Minn. 1981); *Commercial Trust Co. v. Barnard,* 27 N.J. 332, 142 A.2d 865 (1958); *Knox Cy. v. Fourth & First Nat'l Bank,* 181 Tenn. 569, 182 S.W.2d 980 (1944); *Will of Mueller v. Mueller,* 28 Wis. 2d 26, 135 N.W.2d 854, 24 A.L.R.3d 714 (1965). *See also* Annot., 24 A.L.R.3d 730 (1969); *In re Trust of Dwight,* 204 Misc. 204, 128 N.Y.S.2d 23 (1952); *In re Estate of Newhoff,* 107 Misc. 2d 589, 435 N.Y.S.2d 632 (Sur. Ct. 1980).

prudent to diversify. *See* Restatement (Second) of Trusts §
228, comments *c, f* (1959). Therefore, we hold a trustee by
virtue of the prudent investor rule is under a duty to
diversify trust investments.

Leonard's trust contained no provisions relieving the
Bank of its duty to diversify. *Baldus v. Bank of Cal., supra.*
Likewise, none of the circumstances here would have made
it imprudent to diversify. *Cf. Commercial Trust Co. v.
Barnard*, 27 N.J. 332, 142 A.2d 865 (1958) (no duty to
diversify where sole investment in tax–exempt securities
was best possible investment given high income status of
plaintiff income beneficiaries).

The Bank contends, however, the trust was diversi-
fied between the securities and the equity investment of
the real property farmland. The Bank further asserts the
Washington Trust Act of 1984 (Laws of 1984, ch. 149; RCW
11.100.010 *et seq.*) which amended RCW 30.24.010 *et seq.*
supports its contention because RCW 11.100.020[6] sets out
the "total asset" approach to investment. RCW 11.100.020

---

[6]RCW 11.100.020 provides:

"(1) A fiduciary is authorized to acquire and retain every kind of property. In
acquiring, investing, reinvesting, exchanging, selling and managing property for
the benefit of another, a fiduciary, in determining the prudence of a particular
investment, shall give due consideration *to the role that the proposed investment
or investment course of action plays within the overall portfolio of assets.* In
applying such total asset management approach, a fiduciary shall exercise the
judgment and care under the circumstances then prevailing, which persons of
prudence, discretion and intelligence exercise in the management of their own
affairs, . . .

"(2) . . . *the following are among the factors that should be considered by a
fiduciary in applying this total asset management approach*:

". . .

"*(g) Other assets of the beneficiary or beneficiaries* including earning capac-
ity; . . .

". . .

"Within the limitations of the foregoing standard, and subject to any express pro-
visions or limitations contained *in any particular trust instrument*, a fiduciary is
authorized to acquire and retain every kind of property, real, personal, or mixed,
and every kind of investment specifically including but not by way of limitation,
debentures and other corporate obligations, and stocks, preferred or common,
which persons of prudence, discretion, and intelligence acquire for their own
account." (Italics ours.)

was not adopted, however, until after the trial court had rendered its decision in this case. Notwithstanding, the Bank argues legislative intent indicates the 1984 trust act applies retroactively. RCW 11.100.050 provides: "Scope of chapter. [Effective January 1, 1985.] The provisions of this chapter govern fiduciaries acting under wills, agreements, court orders, and other instruments effective before or after January 1, 1985."

Contrary to the Bank's contention, the plain language of RCW 11.100.050 specifies the 1984 trust act is effective as of January 1, 1985. Although its provisions apply to instruments created before that time, any new standards of care created thereby only apply from January 1, 1985, forward. Here, the bonds were sold in 1982.

Whether RCW 30.24.020 itself implicitly incorporates the "total asset" approach is unnecessary to decide. The trial court expressly found the Bank had not weighed the investment in securities against the investment in the farmland for purposes of diversification. Finding of fact 5 provides, in part:

> The Bank went beyond the bounds of reasonable judgment in concentrating investments almost exclusively in municipal bonds. Although this court has concluded that the remainder interest in the farmlands could not be considered equity investment by the trustee, *if it were the trustee did not at any time make any considered conscious balancing of risk and advantages weighing the amount invested in farmland equity against the amount invested in fixed–income securities.*

(Italics ours.)

While the Bank argues in its reply brief that finding of fact 5 is not supported by substantial evidence, it did not assign error to it in its opening brief. Thus, it is a verity on appeal. *State v. Moses,* 70 Wn.2d 282, 284, 422 P.2d 775, *cert. denied,* 389 U.S. 428 (1967); *Bayley v. Kane,* 16 Wn. App. 877, 560 P.2d 1165 (1977); *St. Luke's Evangelical Lutheran Church v. Hales,* 13 Wn. App. 483, 534 P.2d 1379 (1975). Notwithstanding, the evidence supports finding of fact 5. The farmland was valued on the Bank's books at $1.

There is no evidence of the market value of that land, or that the Bank considered other investments, or made any independent determination other than to follow the advice of Richard's attorney and investment broker.

Second, the Bank contends the court erred in computing the amount of surcharge for the improper conveyance of the 5.44 acres in 1975. The Bank maintains the court ignored the value of Richard's life estate, and the surcharge must be discounted by Richard's life expectancy since by the time Russell and Gregory received the land, the one–half remainder interest would have been worth less. This proposition is argued in only one paragraph of the brief; no citation of authority is provided; it will not be considered. *State v. Kroll,* 87 Wn.2d 829, 838, 558 P.2d 173 (1976); *Tokarz v. Frontier Fed. Sav. & Loan Ass'n,* 33 Wn. App. 456, 465, 656 P.2d 1089 (1982). We note, however, the Bank produced no evidence to indicate the value of the land would have decreased because of Richard's use.

Third, the Bank contends the court erred in granting Russell and Gregory attorney fees and expenses. However, it admits "[t]he rights of the parties to fees will largely depend upon the resolution of the surcharge issue." In *Allard v. Pacific Nat'l Bank,* 99 Wn.2d 394, 407–08, 663 P.2d 104 (1983), the court found the trustee had breached its fiduciary duty in the sale of trust assets and stated: "[S]ince defendant breached its fiduciary duty plaintiffs should be granted their request to recover all attorney fees expended at both the trial and on appeal on behalf of the plaintiffs . . ." Russell and Gregory are entitled to attorney fees and expenses given our conclusion the Bank breached its fiduciary duties and was properly surcharged.

Finally, the Bank assigns error to the court's denial of either its trustee or attorney fees. Again, *Allard,* at 407, supports the court's denial of the fees: "[A] trial court abuses its discretion when it awards attorney fees to a trustee for litigation caused by the trustee's misconduct." The court was correct in denying the Bank its fees.

CROSS APPEAL OF RUSSELL AND GREGORY

Russell and Gregory cross–appeal contending: (1) the Bank breached its fiduciary duty by not providing them with information about the trust's administration; (2) the amount of the surcharge for the transfer of 5.44 acres was incorrect; (3) the Bank violated the Consumer Protection Act; and (4) the amount of surcharge for the imprudent diversification was incorrect.

Initially, Russell and Gregory maintain the Bank breached its fiduciary duty because it did not (1) provide them with information about the trust's administration and (2) inform them about the nonroutine transactions of trust assets. *Allard v. Pacific Nat'l Bank, supra,* supports their contentions the Bank breached its fiduciary duty of disclosure. However, the determinative issue is whether they were injured, given the Bank's breach of fiduciary duty. Conclusion of law 3 provides: "Russell and Gregory were not damaged by the violations of any duty of disclosure of information owed to them by the bank."

We agree Russell and Gregory were not separately injured by this lack of information. Allowing them to recover additional damages for the Bank's failure to disclose would in effect constitute a second recovery for harm already compensated for by the surcharges.

Second, Russell and Gregory contend the court erred in calculating the surcharge for the unauthorized transfer of 5.44 acres of trust property. The court found the Bank only had the power to transfer one–half of the interest of the 5.44 acres, *i.e.,* Leonard's one–half community interest in the farmland. Moreover, the court found on the date of the trial the land was worth $800 per acre. Assuming the court was correct in valuing the property at the date of trial, a proper calculation of damages based on these findings would be 5.44 times $800 times one–half, for a total of $2,176. Instead, in conclusion of law 5, the court awarded Russell and Gregory $1,900. Findings of fact 2 and 7 do not logically support a surcharge of $1,900. Rather, if findings of fact 2 and 7 are correct, then the court had no choice but

to conclude the surcharge was $2,176. Therefore, the surcharge must be increased by $276.

In addition, Russell and Gregory assert they are also entitled to damages for the one–half interest in the 5.44 acres which the trial court ruled was not held in trust. This interest would have eventually passed to them as remaindermen under Hazel's will. The court reasoned since Hazel's community interest was not in trust, the Bank never had legal title to her interest in the property; the Bank could not be held liable for this interest.

Although we agree the Bank could not convey title it did not have, it does not follow the Bank should not be held liable for the purported conveyance of Hazel's interest in the 5.44 acres simply because it was not in the trust. The deed purported to transfer the entire fee interest in the 5.44 acres to Ms. Seavy. While we recognize her title to the property is defective, Russell and Gregory nevertheless will be forced to bring a quiet title action against Ms. Seavy who we assume is now in possession of the property. Since the Bank's wrongful transfer created the need for this action, it should be required to compensate for the damages which result from a quiet title action. *Wells v. Aetna Ins. Co.,* 60 Wn.2d 880, 376 P.2d 644 (1962). The court in *Wells,* at 882, noted: "when the natural and proximate consequences of a wrongful act by defendant involve plaintiff in litigation with others, there may, as a general rule, be a recovery of damages for the reasonable expenses incurred in the litigation, including compensation for attorney's fees." Therefore, we remand this issue to the trial court to determine the amount of damages reasonably incurred by Russell and Gregory in quieting title in the property.

Third, Russell and Gregory assign error to the court's determination there was no factual basis for finding a violation of the Consumer Protection Act. RCW 19.86. In bringing a claim under the Consumer Protection Act, the conduct complained of must: (1) be unfair and deceptive; (2) be within the sphere of trade or commerce; and (3) impact the public interest. *Haner v. Quincy Farm Chems.,*

*Inc.,* 97 Wn.2d 753, 759, 649 P.2d 828 (1982); *Anhold v. Daniels,* 94 Wn.2d 40, 45, 614 P.2d 184 (1980). The third requirement, impact the public interest, is shown by evidence the defendant's deceptive acts have the potential for repetition. *Jackson v. Harkey,* 41 Wn. App. 472, 475, 704 P.2d 687, *review denied,* 104 Wn.2d 1023 (1985).

Assuming arguendo the first two prongs of the test have been met, there is little likelihood of repetition given the facts of this case. The conduct of the Bank was not shown to have extended to a widespread pattern of deceptive practices. *See Jackson,* at 477.

Fourth, Russell and Gregory contend the trial court erred in surcharging the Bank only $22,950 which was based on the court's conclusion a reasonable policy would have been to invest 40 percent of the funds in other investment quality stocks.[7] Mr. Nelson, an investment expert, testified the portfolio should have contained between 40 and 60 percent equity stock. Russell and Gregory contend that 50 percent would be a more appropriate percentage for the court to use in computing the damages.

It was within the court's discretion to determine, consistent with the evidence, the extent of the Bank's liability for investing too large an amount in the tax–exempt securities. *See* 3 A. Scott, *Trusts* § 228.1, at 1859–60 (3d ed. 1967). A trustee is liable only for such loss as results from the investment beyond the amount which would have been proper to invest. Restatement (Second) of Trusts § 228, comment *h* (1959). The court's conclusion was within the range which Mr. Nelson testified constituted proper diversification. Therefore, the court did not err in using the conservative figure of 40 percent. *See Pennsylvania Co. v.*

---

[7]The court reached the result of $22,950 by multiplying the portfolio loss of $63,750 by 90 percent (giving the Bank a 10 percent credit for gains realized or built into the portfolio's value by virtue of the fact the bonds were purchased at discount) and then multiplying by the 40 percent ($63,750 x 90 percent x 40 percent = $22,950). The record does not reflect whether the court chose the lower percentage because of the "forced sale" requested by the beneficiaries and ordered by the court; it might be one explanation.

*Gillmore,* 142 N.J. Eq. 27, 59 A.2d 24 (1948); *In re Toel,* 180 Misc. 447, 39 N.Y.S.2d 898, 901–02 (1943).

█ Russell and Gregory also assert the court should have computed into the damage award the amount which equity stock appreciated as a whole during the trust period. We agree the court should have considered the lost appreciation in equity securities which would have been realized but for the failure to diversify. The object of awarding damages to Russell and Gregory is to place them in the position they would have been in if the Bank had prudently diversified between tax–exempt and equity securities. Since the court found the Bank should have placed 40 percent of the funds in equity securities (approximately $77,600), the measure of damages should properly reflect the increase in their value. *See* Restatement (Second) of Trusts §§ 205(c), 207 (1959); *Witmer v. Blair,* 588 S.W.2d 222, 225 (Mo. Ct. App. 1979). *See also* G. Bogert, *Trusts and Trustees* § 701, at 203–07; § 702, at 209–13; § 863, at 48–51 (2d rev. ed. 1982). The court found that the stock equity market, as measured by the broad stock indexes, rose approximately 20 to 22 percent during the trusts' administration. If properly diversified, the trusts should have totaled $171,270 when liquefied.[8] Instead, the trusts totaled approximately $130,250. The correct measure of damages should have been $41,020, not $22,950 as found by the trial court. Therefore, the surcharge is increased by $18,070.

---

[8]If the Bank had invested in a reasonably prudent manner, the loss in tax-exempt bonds would be calculated as follows: 60 percent of $194,000 is $116,400. Since this figure would be discounted 10 percent, only $104,760 would have been invested in bonds. Using the ratio of what was actually invested, *i.e.,* $174,600 ($194,000 discounted by 10 percent) and the actual loss of $63,750, the expected loss from an investment of $104,760 would be $38,250 ($63,750 ÷ $174,600 x $104,760 = $38,250).

If 40 percent had been invested in equity securities, the 20 percent gain in value would have generated an increase of $15,520. (The 10 percent discount would not apply. Thus, $194,000 x .40 = $77,600 x .20.) Hence, the res should have had a value of approximately $171,270. However, the securities were liquefied for approximately $130,250 ($194,000 – $63,750). Thus, the Bank through poor investment practice damaged the estate $41,020.

## CROSS APPEAL OF RICHARD

Richard alleges the attempt by Russell and Gregory to amend their answer to assert a claim against him was frivolous and entitled him to attorney fees. RCW 4.84.185. However, Russell and Gregory apparently attempted to amend their answer only after discovering Richard had joined the Bank in conveying the 5.44 acres. Moreover, the commissioner of this court granted the motion for discretionary review after the trial court denied Russell and Gregory's motion to amend. While this court eventually upheld the decision of the trial court, an action by Russell and Gregory is still pending in Walla Walla Superior Court. The actions by Russell and Gregory were not so unwarranted as to be deemed frivolous.

Richard further asserts Russell and Gregory acted in bad faith by attempting to amend their answer. As a result, he contends he is entitled to attorney fees based on equitable grounds. *PUD 1 v. Kottsick,* 86 Wn.2d 388, 545 P.2d 1 (1976). However, given the facts presented above, the record is devoid of any evidence of bad faith on their part. Richard's request for attorney fees is denied.

The judgment is affirmed in part, remanded in part, and reversed in part. The total amount of damages is increased by $18,346 ($41,020 − $22,950 = $18,070 + $276).

THOMPSON, J., concurs.

GREEN, C.J. (dissenting)— Although Baker Boyer National Bank failed to assign error to finding of fact 5 in its opening brief, as required by RAP 10.3(g), it did so in its reply brief. Since the briefs of both parties deal with the matters contained in this finding, there is no prejudice to any party by considering the merits of the assignment of error. Therefore, I respectfully dissent.

Finding of fact 5 states:

> The liquid assets and intangibles in each trust consisted of cash and various securities. During the period of trust administration, the bank invested basically in tax

exempt securities, the intent and purpose of which was to increase the income yield to Garver. The basis for purchasing tax exempt municipal bonds was apparently Garver's counsel's word or his broker Shield's word. The specific investments placed or held in trust were made either by Garver or by the bank. The bank went beyond the bounds of reasonable judgment in concentrating investments almost exclusively in municipal bonds. Although this Court has concluded that the remainder interest in the farm lands could not be considered equity investments by the trustee, if it were the trustee did not at any time make any considered conscious balancing of risks and advantages in weighing the amount invested in farm land equity against the amount invested in fixed income securities.

In my view the court erred when it found "[t]he bank went beyond the bounds of reasonable judgment in concentrating investments almost exclusively in municipal bonds." In making this finding, the court eliminated consideration of farmland which it found was distributed to the trusts from the estates of Leonard R. Garver and Hazel Garver. This land was the primary asset of a total estate valued for federal tax audit purposes at over $860,000. The decedents' son, Richard, received a life estate in the land and the remainder to his sons, Russell and Gregory, to vest when they attained age 25. Tax–exempt bonds valued at $194,500 were also distributed to the trusts. In deciding the question of whether the trust estate was prudently diversified, the court excluded the land from its consideration. In doing so, I believe the court erred. Restatement (Second) of Trusts § 227, comment o, at 535 (1959).[9]

It is evident the Bank was in the delicate position of balancing the conflicting interests of the life tenant, who needed tax–exempt income, and the remaindermen, who wanted the principal to appreciate in value. If the Bank is

---

[9]Comment o states that among the matters a trustee should consider in selecting a given investment are: "(6) the aggregate value of the trust estate and the nature of the other investments; . . . (8) the other assets of the beneficiary or beneficiaries including earning capacity". This principle has been incorporated into RCW 11.100.020.

prohibited from considering the land in balancing the beneficiaries' interests, then it is impossible for the Bank to satisfy the best interests of the beneficiaries as they are in direct conflict. As a consequence, any action detrimental to either interest could be argued imprudent by the other party.

Here, the record shows that Richard's income as a life tenant placed him in a tax bracket where he needed tax-exempt income to avoid higher taxes. On the other hand, the remaindermen would eventually receive the farmland that could appreciate in value keeping pace with inflation, and bonds that would pay off at their face value about the time of expiration of Richard's life expectancy. In fact, some of the farmland by the time of trial had already appreciated from $200 per acre to $800 (finding of fact 7). According to its trust officers, the Bank, in balancing the conflicting interests of the beneficiaries, decided the remaindermen had a diversified portfolio of bonds and valuable land and concluded the bonds should be retained to satisfy the life estate's need for tax-exempt income. Further, any sale of the bonds would have been at a loss to the estate and whether a reinvestment would have recouped the loss is speculative. To form a contrary opinion is to be governed by hindsight which, without more, is insufficient to establish abuse of discretion by the Bank. *Baldus v. Bank of Cal.*, 12 Wn. App. 621, 530 P.2d 1350, *review denied*, 85 Wn.2d 1011 (1975). In fact, the bonds were sold, pursuant to court order and at the beneficiaries' request, at a substantial loss. Considering all of these circumstances, I conclude the Bank acted prudently in dealing with these conflicting interests. My conclusion coincides with the total-asset approach adopted in RCW 11.100.060 for measuring whether a trustee prudently managed trust property.

The court also found the Bank did not "make any considered conscious balancing of risks and advantages in weighing the amount invested in farm land equity against the amount invested in fixed income securities." The testi-

mony of the trust officers supports a finding to the contrary. Even if the court's finding is correct, the underlying question is whether the fact of diversification between the land and the tax–exempt bonds was prudent. Whether there was a conscious balancing evidenced in the record is immaterial where prudent diversification exists in fact. As I have indicated, the farmland should have been considered an equity investment that would pace inflation and counterbalance the bonds that produced tax–exempt income. Since this portion of the court's finding was interlineated at the time of entry, it must have influenced the court's conclusions of law and to that extent it was error.

Further, the findings were based primarily on the testimony of Mr. Nelson, a full–service investment broker from Seattle, who rejected consideration of the farmland in rendering his expert opinion as to whether the Bank properly diversified the trust estate. Since I have concluded all of the assets of the trust, including the farmland, should have been considered in making this determination, his testimony should be disregarded. The only remaining expert testimony is that of Mr. Brockhouse, Vice–President Trust Counsel for Seattle–First National Bank, Seattle, who testified the farmland should have been considered and Baker Boyer National Bank had prudently diversified the trust estate. His testimony supports my conclusion and governs the diversification issue.

For these reasons, I would reverse the damage award based on imprudent trust investment and adjust the award of attorney fees accordingly.

Reconsideration denied June 12, 1986.

Review denied by Supreme Court September 2, 1986.